48 F.3d 1216
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 John Stevenson MARTIN, Plaintiff-Appellant,
v.
W.C. BOWMAN, Jail Administrator; McDowell County
Commission; Doctor Sutton; McDowell County Jail; Peggy
Blevins, individually and in her official capacity as Jail
Administrator; Robert D. Lewis, individually and in his
official capacity as member of the County Commission,
McDowell County, West Virginia; G. Mike Cortellesi,
individually and in his official capacity as member of
County Commission of McDowell County, West Virginia; Jerry
K. Horne, individually and in his official capacity as
member, County Commission of McDowell County, West Virginia;
Donald L. Hicks, individually and in his official capacity
as Sheriff of McDowell County, Defendants-Appellees.
Walter Lefight CHURCH, Plaintiff-Appellant,
v.
Bill BOWMAN; Betty Hardin; Peggy Blevins, individually and
in her official capacity as Jail Administrator; County
Commission of McDowell County, West Virginia; Robert D.
Lewis, individually and in his official capacity as member
of the County Commission of McDowell County, West Virginia;
G. Mike Cortellesi, individually and in his official
capacity as member of County Commission of McDowell County,
West Virginia; Jerry K. Horne, individually and in his
official capacity as member of County Commission of McDowell
County, West Virginia; Donald L. Hicks, individually and in
his official capacity as Sheriff of McDowell County;
McDowell County Correctional Center, Defendants-Appellees.
 Nos. 94-6246, 94-6256.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1994.
Decided Feb. 24, 1995.
 
 ARGUED: Robert Shelton Baker, Appalachian Research and Defense Fund, Inc., Beckley, WV, for appellants. Joanna Irene Tabit, Steptoe & Johnson, Charleston, WV, for appellees. ON BRIEF: James Kringlen, Appalachian Research and Defense Fund, Inc., Beckley, WV, for appellants. Daniel R. Schuda, Steptoe & Johnson, Charleston, WV, for appellees.
 Before LUTTIG and WILLIAMS, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 These two cases, consolidated for appeal, are actions brought under 42 U.S.C. Sec. 1983 by pretrial detainees for alleged deliberate indifference to medical needs. Plaintiffs contend that Defendants'[1] failure to provide them arthroscopic knee surgery without delay violates their rights as pretrial detainees under the Due Process Clause of the Fourteenth Amendment. The United States District Court for the Southern District of West Virginia, Faber, J., granted summary judgment against these claims. We affirm.
 
 I.
 
 2
 Walter Lefight Church has been a pretrial detainee at the McDowell County Correctional Center ("MCCC") in West Virginia since April 24, 1992.[2] Approximately five years prior to his incarceration, Church was struck by an automobile and has since suffered periodic problems with his right knee. In July 1990, about two years before his incarceration, Church saw Dr. Yogesh Chand, an orthopedic surgeon, who diagnosed his condition as a torn medial meniscus. Dr. Chand advised Church that he could undergo arthroscopic surgery or learn to live with the knee condition.
 
 
 3
 During Church's detention at MCCC, he was referred to Dr. Chand after complaining of knee pain. In a report dated July 31, 1992, Dr. Chand diagnosed internal derangement of the right knee and expressed concern about the possibility of the knee giving way and causing a fall. Dr. Chand further recommended arthroscopic surgery, but stated that Church "has, of course, lived with the problem for at least a year or so.... In light of that, [the surgery] does not have to be done right away and it could be delayed until a permanent location is arranged for him." After reviewing Dr. Chand's recommendation, the Commission voted not to approve surgery at that juncture and further ordered that Church not be given any strenuous exercise which could further injure the knee. Nevertheless, throughout his stay at MCCC, Church took part in recreational activities that required full use of his knee.
 
 
 4
 In November 1992, Church's knee gave out while he was descending stairs. He was given prompt medical attention, prescribed pain medication, and was again referred to Dr. Chand. Following this examination, Dr. Chand felt that Church would "improve with time.
 
 
 5
 If he does not improve in the right knee, I advised him that he should consider the arthroscopic surgery."
 
 
 6
 In December 1992, MCCC's administrator wrote to Dr. Chand and inquired as to whether Church's knee surgery was an elective procedure. In response, Dr. Chand stated that "[i]t is not a life threatening emergency. However, it is an elected [sic][3] surgical procedure." Then, in January 1993, Church was referred to a second orthopedic surgeon, Dr. David Shamblin, for a second opinion. Dr. Shamblin's report stated:
 
 
 7
 [T]he [knee] operation is an emergent one in the normal situation. Most people would say that a torn meniscus should be operated on sooner rather than later. The operation is an elective one. If it is not performed immediately, it will on [sic] be life threatening.... It can be life threatening if the knee gives away on him on an inopportune location such as a stairwell. The operation can be planned for a convenient time.
 
 
 8
 After considering this second opinion, the Commission again voted to deny Church's surgery in January, February, and March 1993.
 
 
 9
 In May 1993, after being informed that Church had to be taken to a local emergency room to have his knee examined, the Commission voted to take Church's surgery "under advisement." The surgery was approved by the Commission in July 1993, and the surgery was performed on July 20, 1993.
 
 
 10
 John Stevenson Martin was a pretrial detainee at MCCC from August 26, 1992, until March 12, 1993, when he was transferred to a state penitentiary to serve a sentence for a felony conviction.
 
 
 11
 Approximately two years prior to being detained at MCCC, Martin was hit by an automobile and suffered an injury to his right knee. Upon his arrival at MCCC, Martin complained of pain in the knee stemming from his arrest. He was taken to a local emergency room and examined by Dr. Andres Rago, who stated that Martin had no fracture or dislocation of the knee and prescribed pain medication.
 
 
 12
 Martin was eventually referred to Dr. Chand, who examined Martin in September 1992. Dr. Chand concluded that Martin suffered from an internal derangement of the right knee. He further noted that Martin's condition was not life threatening and could be corrected with elective surgery. Notwithstanding his complaints of pain, Martin regularly played basketball in the recreation area of MCCC, demonstrating full operative use of his right knee.
 
 
 13
 In January 1993, Martin's knee began to swell and drain fluid. Martin was sent to Dr. David Shamblin for an examination, and Dr. Shamblin reported that the knee was infected and that no surgical procedure should be performed until the infection in the knee markedly decreased. After being informed of this finding, the Commission denied approval of the operation. During a random check of the indoor recreation center at MCCC on January 27, 1993, Martin was observed "rap dancing"[4] by a prison guard. His crutch was leaned up against a table, and he did not show any visible signs of discomfort while he was dancing. Martin was ultimately provided the surgical procedure after his transfer to another facility in March 1993.
 
 
 14
 Church and Martin filed separate Sec. 1983 actions in the United States District Court for the Southern District of West Virginia, alleging that the deprivation of and delay in providing knee surgery entitled them to declaratory relief, injunctive relief, and money damages. In both cases, the district court granted summary judgment to Defendants.
 
 
 15
 A grant of summary judgment is reviewed de novo. Foster v. Fed. Emergency Management Agency, 984 F.2d 128, 130 (4th Cir.1993). Summary judgment is appropriate where there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 973 (4th Cir.1990). In order to withstand a motion for summary judgment, the non-moving party must offer evidence from which "a fairminded jury could return a verdict for the [non-moving party]. " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 II.
 
 16
 The district court found that the Commission and the official capacity Defendants[5] were entitled to summary judgment because the record, in both cases, failed to establish "a policy or custom which directly caused a deprivation of plaintiff[s'] constitutional right to medical care." A municipal body, like the Commission, can only be held liable under Sec. 1983 if it takes part in an unconstitutional action which implements a "custom" or "policy" of the entity. Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 694 (1978). Thus, to be entitled to recovery under Sec. 1983, a plaintiff must show both that unconstitutional action occurred and that the action was committed pursuant to a "custom" or "policy" of the government entity.
 
 
 17
 The unconstitutional action alleged by Plaintiffs is the failure to provide proper medical care in a timely fashion. A pretrial detainee can establish a violation of the Due Process Clause upon proof of "deliberate indifference to serious medical needs." Gray v. Farley, 13 F.3d 142, 146 (4th Cir.1993). However, the record in this case fails to disclose evidence sufficient to withstand summary judgment as to either component of this standard.
 
 
 18
 A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991). Both Church and Martin contend that the knee surgery they sought was a mandatory treatment, making their needs "serious" and entitling them to constitutional protection. The record does not support this assertion. In the case of both Church and Martin, the county doctors consistently informed the Commission that the surgery was elective, and at no time was the Commission told that the surgery had to be performed immediately. Both Plaintiffs suffered from the knee condition for a substantial period of time before being incarcerated, yet only sought surgery upon being incarcerated. Both Plaintiffs took part in recreational activities at MCCC, such as basketball, which required full use of their injured knees. Both Plaintiffs were referred to orthopedic specialists and were prescribed pain medication. In sum, neither Plaintiff has produced any evidence indicating that the surgery each sought was not an elective treatment or that the Commission was at some time told that the surgery was mandatory. Absent such evidence, the knee conditions cannot be considered "serious." See Green v. Manning, 692 F.Supp. 1283 (S.D. Ala.1987) (directed verdict granted where recommended knee surgery for prisoner was elective and there existed no urgent need for immediate action).
 
 
 19
 Furthermore, Plaintiffs have failed to produce any evidence indicating that the Commission was deliberately indifferent to their knee conditions. Deliberate indifference exists where a prison official knows "that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). To establish deliberate indifference, the treatment of the medical condition must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990).
 
 
 20
 In the case at bar, no evidence exists to support the contention that the treatment afforded to Plaintiffs was so inadequate as to "shock the conscience" or "be intolerable to fundamental fairness." Plaintiffs were given access to orthopedic specialists on numerous occasions and were prescribed pain medication for their knee conditions. At no time was the Commission told that the recommended surgery was mandatory; instead, the physicians' reports consistently made clear the elective nature of the operation. In addition, the Commission was aware that the conditions were in existence for several years prior to Plaintiffs' incarceration and that Plaintiffs took part in recreational activities involving full use of their knees. Finally, Plaintiffs were pretrial detainees who at any time during their detention could have been released or transferred to another facility with little warning. A local government's interest in limiting the cost of detention justifies providing no more than a reasonable level of medical care to pretrial detainees. Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988).
 
 
 21
 In light of this evidence, the record simply cannot support a finding that the Commission exhibited deliberate indifference in its treatment of Plaintiffs' knee conditions. Plaintiffs were provided prompt medical attention, and their only complaint is the failure of the Commission to promptly provide elective knee surgery which Plaintiffs themselves did not seek until incarcerated. The district court properly granted summary judgment to the Commission and the official capacity Defendants.
 
 III.
 
 22
 The district court found that the individual Defendants were entitled to qualified immunity which precluded recovery against them in their individual capacities. We agree.
 
 
 23
 Public officials carrying out discretionary functions are entitled to qualified immunity unless they engage in conduct that violates "clearly established ... constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity may be established by showing (1) the right allegedly violated was not "clearly established" at the time, or (2) though "clearly established," the right was one that a reasonable person in the official's position could have failed to appreciate would be violated by his conduct. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992). Thus, qualified immunity is designed to protect all but "the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).
 
 
 24
 It is undisputed that a pretrial detainee's right to proper care for a serious medical condition is a clearly established right. Whisenant v. Yuam, 739 F.2d 160, 165 (4th Cir.1984). However, there is no evidence in the record to support the assertion that it was a violation of this or any other clearly established right for the Commissioners not to provide elective surgeries of the type requested, under the circumstances here and with the information they possessed. The Commissioners were consistently told that the surgeries were elective, rather than mandatory. Plaintiffs were given access to doctors and were prescribed pain medication. The knee conditions existed long before Plaintiffs' incarceration, and one of Dr. Chand's reports stated that this type of injury was something a patient "could learn to live with." Given these circumstances, it cannot be said that the Commissioners violated clearly established law by deciding not to provide the surgeries. The individual Defendants are entitled to qualified immunity.
 
 IV.
 
 25
 In sum, Plaintiffs have failed to produce sufficient evidence to support their claims that Defendants were deliberately indifferent to their serious medical needs. Accordingly, the decision of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The only Defendants on this appeal are the County Commission of McDowell County ("Commission") and the three County Commissioners in their official and individual capacities. The Commission oversees the operation of the McDowell County Correctional Center, where Plaintiffs were pretrial detainees
 Plaintiffs also named various jail officials in their complaints, but the dismissal of the claims against the jail officials is not the subject of this appeal.
 
 
 [2]
 Since filing this appeal, Church has been convicted of at least one offense and is awaiting transfer to a new facility
 
 
 [3]
 Given the context, it appears that Dr. Chand meant "elective." Plaintiffs, on the other hand, argue that this is not a typographical error but rather that Dr. Chand used "elected" to mean that the surgery had been elected over other possible treatments because it was necessary. Such an assertion appears to be an inordinate stretch given the context of the sentence and the fact that the letter was in response to MCCC's inquiry as to whether the surgery was elective
 
 
 [4]
 The court has consulted both Webster's Third New International Dictionary (1986) and Black's Law Dictionary (6th ed.1990) in search of a definition of "rap dancing." This attempt, by all accounts, has failed. Whatever "rap dancing" may be, the court feels assured that the activity involves extensive operative use of various parts of the anatomy, including the knee
 While the author of this per curiam opinion has no personal knowledge of the physical requirements for dancing of any type, save and except a very rusty and inept old fashioned two-step, it is assumed that if any member of the panel has personal experience in "rap dancing" and knowledge that it requires no physical exertion of the knees then this author will stand corrected.
 
 
 [5]
 An official capacity lawsuit against a public official is only another way of pleading an action against the entity of which the official is an agent. Hafer v. Melo, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Therefore, the action against the individual Commissioners in their official capacities is merely another way of pleading the action against the Commission itself