956 F.2d 1163
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Edward PRICE, Plaintiff-Appellant,
v.
Edward CAREY, Defendant-Appellee,
and
Virginia Department of Corrections Medical Department;
James E. Johnson, Warden, Buckingham Correctional Center;
Unknown Administrative Personnel, Officers and Medical
Personnel of the Buckingham Correctional Center, Defendants.
 No. 91-6643.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1991.
Decided Feb. 26, 1992.
 
 1
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, District Judge. (CA-88-526-R)
 
 
 2
 Argued Steven David Rosenfield, Charlottesville, Va., for appellant.
 
 
 3
 Mary M. Hutcheson Priddy, McGuire, Woods, Battle & Boothe, Richmond, Va., for appellee.
 
 
 4
 On Brief Sandra M. Holleran, McGuire, Woods, Battle & Boothe, Richmond, Va., for appellee.
 
 
 5
 E.D.Va.
 
 
 6
 AFFIRMED.
 
 
 7
 Before WIDENER and LUTTIG, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, Sitting by Designation.
 
 OPINION
 SHEDD, District Judge:
 
 8
 James Edward Price appeals from a final judgment of the district court on his claim of deliberate indifference to serious medical needs against Dr. Edward Carey, which Price has brought under 42 U.S.C. § 1983. Price contends that the district court erred (1) in finding that there was no evidence that Dr. Carey was aware that Price was in pain, distress, or danger; and (2) in concluding that Price failed to establish his claim of deliberate indifference. Finding no error, we affirm the judgment of the district court.
 
 
 9
 * Price is a state prisoner committed to and confined in the Virginia Department of Corrections (VDOC). On April 6, 1988,[1] Price entered the VDOC system at the Powhatan Reception and Classification Center. Price was examined at that time by Dr. Balvir Kapil, a VDOC doctor, who confirmed a medical record brought by Price which indicated that Price required surgery for a right inguinal hernia. Dr. Kapil noted his confirmation of the need for surgery in Price's medical record, and he placed a "medical hold" on Price and referred him to a surgeon. On June 28, before a surgical evaluation could be made, Price was transferred to the Buckingham Correctional Center.
 
 
 10
 The following day, Dr. Carey, the institutional physician at Buckingham, examined Price's records. Dr. Carey noted that Price had a right inguinal hernia,[2] but he determined, based on the records, that Price's hernia did not present an emergency. Dr. Carey did not examine Price until August 3. At that time, Dr. Carey noted in Price's medical records that the hernia was becoming difficult to reduce and required surgery "soon." Dr. Carey never examined Price again after this date.
 
 
 11
 On August 5, Dr. Carey referred Price to Dr. Cabiling,[3] who was a surgeon at the Powhatan Surgery Clinic. Dr. Cabiling examined Price and noted in Price's medical records that Price did require the surgery previously recommended and that the surgery should be performed at the Medical College of Virginia (MCV). Upon receiving this information, Dr. Carey requested permission from VDOC for Price to have the surgery at MCV and Dr. Carey was informed that the surgery would be authorized.
 
 
 12
 Price, however, was becoming impatient with what he perceived to be an inordinate delay in receiving treatment for his hernia. Price therefore filed an administrative grievance in which he requested that his hernia be fixed because his pain was increasing and he was having difficulty reinserting the hernia. On August 8, Dr. Carey responded to the grievance by stating that arrangements were being made for Price's surgery. Thereafter, Price was administratively approved for surgery by the Chief Physician of the VDOC and on August 24, Dr. Carey referred Price to a clinic at MCV. However, the doctor at the MCV clinic was unable to reduce Price's hernia and referred Price to the MCV emergency room. Dr. Cornelius Dyke reduced Price's hernia at the emergency room and discharged him with a recommendation for surgery "as soon as possible."
 
 
 13
 Dr. Carey reviewed Price's medical records upon his return and determined that Price did not need surgery that day since he had been released by MCV. Dr. Carey requested permission to place Price on the list for elective surgery and did in fact place him on the list.[4] However, Price filed another administrative grievance in which he again requested that he have his hernia operation and in which he specifically complained about the apparent delay in receiving medical treatment. On September 19, Dr. Carey responded to the grievance by saying that Price had been approved for the operation and that he was waiting for Price to be scheduled for surgery by MCV.
 
 
 14
 On December 15, Price reported to the Buckingham medical department and complained to a nurse about sinus pain and coldrelated symptoms, and about his hernia getting larger. Price informed the nurse that he was having a "burning sensation" in his upper left thigh and he stated that this indicated the same pattern as his right hernia. On December 19, Dr. Carey reviewed Price's records, including his most recent complaints, and noted in the records that requests had been made for Price's surgery. On January 10 and 27, 1989, Price reported to the medical department, complaining about injuries that he had received in a fight and about a cold, respectively. Price did not, however, make any reference to his hernia or problems associated therewith during either of these visits. On April 14, 1989, Price had surgery at MCV for his hernia, which was then incarcerated, and was released in stable condition.
 
 
 15
 Price filed this action pursuant to 42 U.S.C. § 1983 contending that Dr. Carey violated his civil rights by failing to obtain prompt medical treatment for his hernia.[5] By order of the district court, the Honorable David G. Lowe, United States Magistrate Judge, conducted an evidentiary hearing in this matter. On July 12, 1991, the magistrate judge filed a Proposed Memorandum recommending that judgment be entered in favor of Dr. Carey. Price filed four objections to the recommendation of the magistrate judge; however, on August 12, 1991, the district court overruled Price's objections, adopted the Proposed Memorandum as the opinion of the court, and entered judgment in favor of Dr. Carey. Price subsequently filed a motion for a new trial or for reconsideration, which the district court denied. This appeal followed.
 
 II
 
 16
 As noted, Price raises two issues in this appeal. We shall address each issue separately below.
 
 A.
 
 17
 Price first argues that the district court erroneously found as a factual matter that there was no evidence to indicate that Dr. Carey was aware that Price was in pain, distress, or danger. Price contends that his complaints in his administrative grievances and at his December 15 visit to the medical department, coupled with Dr. Carey's knowledge of the same, establish that Dr. Carey was aware that he was in pain and was in medical danger. Because Price is challenging a finding of fact of the district court, we apply the clearly erroneous standard of review, Fed.R.Civ.P. 52(a), and construe the evidence in the light most favorable to Dr. Carey, as appellee. Ente Nazionale Per L'Energia Electtrica v. Baliwag Navigation, Inc., 774 F.2d 648, 654 (4th Cir.1985).
 
 
 18
 Dr. Carey testified and the district court found that no one ever brought to his attention that Price was experiencing pain and discomfort. In his first administrative grievance, Price did state that the "burning and pain [are] increasing." Following this administrative grievance, however, Price was examined and released by Dr. Dyke at MCV and Dr. Carey, interpreting this release to indicate a nonemergency situation, placed Price on the list for elective surgery. Thereafter, Price did not make any specific complaint to Dr. Carey or anyone else that he was in pain or otherwise indicating that he was in distress or danger, despite the fact that he filed an additional administrative grievance and made three visits to the medical department. Although Price did complain at his December 15 visit to the medical department that his hernia was getting larger and that he was experiencing pain, the pain to which Price referred was on his left side, opposite from his hernia. Based on these facts, we find the district court's account to be plausible in light of the record viewed in its entirety; accordingly, we cannot reverse. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985); Davis v. Food Lion, 792 F.2d 1274, 1277 (4th Cir.1986).
 
 B.
 
 19
 Price next argues that the district court erred in concluding that he did not establish that Dr. Carey was deliberately indifferent to his serious medical needs. Price asserts that Dr. Carey's failure to examine him or otherwise provide medical treatment for his hernia after August 24, the date that Price was released from MCV without having had surgery, constitutes deliberate indifference since Dr. Carey either ignored Price's medical problem or failed to take appropriate steps to ascertain the extent of the problem.[6] Although both parties characterized this issue in their briefs as a factual finding, we view the district court's ruling on this point to be a conclusion of law, see Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir.1985), which is subject to de novo review. United States v. Reid, 929 F.2d 990, 992 (4th Cir.1991).
 
 
 20
 Deliberate indifference to an inmate's serious medical needs is a violation of the eighth amendment ban on cruel and unusual punishment and is actionable under Section 1983. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir.1990). A medical need is "serious" if it is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981) (citation omitted). Deliberate indifference may be demonstrated by actual intent or reckless disregard; however, mere negligence or malpractice is insufficient to constitute a violation of the eighth amendment. Miltier, 896 F.2d at 851-52.
 
 
 21
 As addressed above, we have already determined that the district court's factual finding that Dr. Carey was not aware that Price was in pain, distress, or danger is not clearly erroneous. Therefore, Dr. Carey's treatment of Price must be viewed in light of the knowledge that he possessed. The record shows that following Price's return from MCV in August, Dr. Carey determined that Price's condition did not warrant immediate treatment.[7] Dr. Carey therefore placed Price on the list for elective surgery which was to be scheduled by personnel at MCV. Although Price thereafter filed his second administrative grievance over his desire to receive treatment and made complaints concerning his hernia to a nurse in the medical department at his December 15 visit, he did not present any information to indicate that his situation was an emergency mandating immediate treatment. Therefore, we agree with the district court that while the delay Price experienced in obtaining repair of his hernia is unfortunate, Dr. Carey's treatment of Price was not so grossly incompetent, inadequate, or excessive as to rise to the level of a constitutional violation under Section 1983.
 
 III
 
 22
 After carefully reviewing the record and the controlling authorities, we find the decision below to be proper. Accordingly, the judgment is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Unless otherwise noted, all dates referred to are 1988
 
 
 [2]
 As the district court noted in its Findings of Fact:
 An inguinal hernia is essentially a hole in the tissue separating the abdominal cavity from the scrotum. If the hole becomes large enough, a portion of the intestine may pass through it and into the scrotum. When that occurs it is referred to as an incarcerated hernia. The process of pushing the material back through the hole and out of the scrotum is termed reducing the hernia. If a hernia cannot be reduced, it can lead to a life-threatening condition where the intestine may twist, cutting off its own blood supply. Such a condition is termed a strangulated hernia.
 (Joint Appendix, p. 9).
 
 
 [3]
 Dr. Cabiling's full name does not appear in the record
 
 
 [4]
 MCV controls the scheduling for elective surgery
 
 
 [5]
 The VDOC Medical Department was also a defendant in this lawsuit; however, the district court dismissed the claim against the VDOC Medical Department on February 12, 1989. Price thereafter amended his complaint to name James E. Johnson, then warden of Buckingham, as a defendant. On April 29, 1991 the district court granted summary judgment in favor of Johnson. Price does not appeal from either of these rulings
 
 
 [6]
 Price concedes that Dr. Carey's conduct prior to August 24 does not rise to the level of deliberate indifference
 
 
 [7]
 Dr. Carey's diagnosis and treatment of Price was supported by the doctors who testified before the district court. Price presented no evidence to rebut this testimony or to establish that Dr. Carey acted improperly