PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ELDRIDGE FRANK WOLFE,
            *Petitioner-Appellant,*

v.

REGINALD WEISNER,
            *Respondent-Appellee.*

No. 05-7728

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-04-646-5)

Argued: January 30, 2007

Decided: May 18, 2007

Before MOTZ, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Motz and Judge Traxler joined.

## COUNSEL

**ARGUED:** James Phillip Griffin, Jr., NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Mary Carla Hollis, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Roy Cooper, Attorney General of North Carolina, Clarence Joe Del-Forge, III, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

**OPINION**

KING, Circuit Judge:

Petitioner Eldridge Frank Wolfe, who is presently serving a life sentence imposed in 2000 in the Superior Court of Wake County, North Carolina, appeals from the district court's 2005 award of summary judgment on his § 2254 petition for federal habeas corpus relief. *See Wolfe v. Weisner*, No. 5:04-HC-646-H (E.D.N.C. Sept. 22, 2005). After the court made its award of summary judgment to the respondent, it also awarded a certificate of appealability to Wolfe on his contention that the trial court had contravened his federally protected due process rights in determining his competency to stand trial (the "COA").[1] As explained below, we affirm on the issues presented by the COA.

I.

On May 16, 2000, Eldridge Frank Wolfe was indicted in the Superior Court of Wake County for first-degree murder and being a violent habitual felon, in connection with the August 3, 1999 shooting death of Paul Solis outside a pool hall in Raleigh, North Carolina.[2] On May

---

[1]The operative language of the COA, issued by the district court on November 30, 2005, certifies an appeal by Wolfe, pursuant to the provisions of 28 U.S.C. § 2253(c), on the following issues:

> whether the process followed at Petitioner's trial [resulted in] an unreasonable determination of the facts in light of the evidence presented; and whether the trial court's decision to proceed with the trial when [petitioner] was not rationally able to participate in his defense [was in error].

J.A. 28 (internal marks added for clarity of issues). (Our citations herein to "J.A.__" refer to the contents of the Joint Appendix filed in this appeal.)

[2]In North Carolina, a defendant who is charged with a violent felony and has been previously convicted of another violent felony may be indicted as a violent habitual felon. *See* N.C. Gen. Stat. §§ 14-7.7, -7.9. A conviction for being a violent habitual felon entails a mandatory sentence of either death or life imprisonment without parole. *See id.* § 14-7.12.

26, 2000, the prosecution moved the trial court to have Wolfe undergo a mental evaluation of his competency to stand trial.[3] In support of its motion, the State submitted the report of Dr. George P. Corvin, a psychiatrist retained by Wolfe's defense counsel (the "Corvin Report"). The Corvin Report reflected that Wolfe was suffering from depression and that "his overall level of psychosocial functioning [was] increasingly impaired as a result of these symptoms." J.A. 31.

By Order of May 26, 2000, the Superior Court granted the prosecution's motion for a competency evaluation, requiring state psychiatric officials to provide the court with a report on Wolfe's mental health and deliver a copy thereof to his lawyers. On July 13, 2000, Wolfe was interviewed by Dr. Robert Rollins, the Director of the Forensic Psychiatry Division of Dorothea Dix Hospital, a state mental health facility. On August 9, 2000, Dr. Rollins completed a report in which he concluded that Wolfe was competent to stand trial (the "Rollins Report"). The Rollins Report indicates on its face that it was sent to the presiding judge, the clerk of court, and counsel for the defendant. *See* J.A. 34.

Wolfe's case was called for trial in the Superior Court on October 2, 2000. During pretrial motion proceedings, Wolfe's lawyers claimed that they had not seen the Rollins Report, which Dr. Rollins had distributed in August. In response, the judge located the Rollins Report in Wolfe's court file and provided copies of it to counsel. After being given a few minutes to review the Report, the defense lawyers requested additional time to prepare for Wolfe's competency hearing.[4] Defense counsel also sought to discuss the matter with Dr. Corvin and any other mental health professionals who might have examined Wolfe. Wolfe's lawyers, however, were not prepared to present any

---

[3]The facts spelled out herein are only those relevant to the issues presented by the COA. Because we are reviewing the summary judgment award made to the respondent, the facts must be viewed in the light most favorable to Wolfe, and they are set forth in that manner. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4]Pursuant to the governing North Carolina statute, a court is obliged to hold a competency hearing when the capacity of a defendant to proceed is questioned. *See* N.C. Gen. Stat. § 15A-1002(b).

additional evidence concerning Wolfe's competency, and did not assert that he lacked the capacity to be tried. Accordingly, after hearing the views of the prosecution, the court ruled that Wolfe was competent to stand trial.

On the morning of October 3, 2000, the trial court began jury selection for Wolfe's trial. A total of four jurors were qualified and selected that day. On October 4, 2000, defense counsel again requested a continuance of Wolfe's trial, asserting that Wolfe's mental condition was fundamentally different than it had been in the preceding days. Wolfe's lawyer advised the court that Wolfe was having difficulty with his thought processes, could not recall the events of the previous day, and was having trouble understanding the proceedings. In response, the court authorized another evaluation of Wolfe's competency. The court observed, however, that Wolfe's behavior during jury selection indicated he was able to confer with his counsel and participate in the proceedings, and it thus declined to delay the trial while awaiting the results of this additional mental examination.

Later that day, Dr. Rollins was summoned to the courthouse to evaluate Wolfe pursuant to the trial court's order. Dr. Rollins examined Wolfe for approximately an hour, and then was called as a witness on the subject of Wolfe's competency. He diagnosed Wolfe with major depression, relational disorder, polysubstance dependence, and personality disorder. Significantly, however, he did not assert that Wolfe was incompetent to stand trial. Rather, Dr. Rollins recommended that the court send Wolfe to the Central Prison Mental Health Facility to receive psychiatric treatment and then be re-evaluated. The court accepted Dr. Rollins's advice and adjourned the proceedings until October 10, 2000, six days hence.

On October 10, 2000, the trial court reconvened and conducted a further hearing on whether Wolfe was competent to stand trial. During this hearing, Dr. Rollins testified that Wolfe was still having problems with communications and with mental focus, but that he seemed less depressed and was able to assist his counsel. Critically, Dr. Rollins asserted that Wolfe was "able to concentrate and communicate sufficiently" and was thus competent to stand trial. J.A. 89. The defense lawyers cross-examined Rollins, and then sought another continuance to allow additional time for Wolfe's medication to take

effect. They did not, however, offer evidence to contradict Dr. Rollins's testimony or the earlier Rollins Report. Thus, the court, relying on Dr. Rollins's assessments, again ruled Wolfe competent to stand trial, and declined to grant an additional continuance.

On October 27, 2000, Wolfe's trial in the Superior Court was resolved with a verdict finding him guilty of second-degree murder (as a lesser included offense of the charge of first-degree murder) and of being a violent habitual felon. That same day, Wolfe was sentenced to life in prison without parole.

On April 1, 2003, the Court of Appeals of North Carolina affirmed the Superior Court's judgment. *See State v. Wolfe*, 577 S.E.2d 655 (N.C. Ct. App. 2003). In so ruling, the court concluded that the Superior Court's competency proceedings had satisfied North Carolina General Statutes section 15A-1002, which implements the requirement — imposed by the Fourteenth Amendment Due Process Clause — that the state courts must observe procedures adequate to avoid trying defendants who are incompetent. The court also affirmed the Superior Court's finding of fact that Wolfe was competent to stand trial. Subsequently, on June 12, 2003, the Supreme Court of North Carolina denied discretionary review. *See State v. Wolfe*, 583 S.E.2d 289 (N.C. 2003). Wolfe's convictions and sentence thus became final on September 10, 2003, when he failed to file a timely petition for certiorari with the Supreme Court of the United States.

On September 7, 2004, Wolfe filed his § 2254 petition in the Eastern District of North Carolina, asserting, inter alia, that his constitutional right to due process of law had been violated by the trial court's handling of the competency issue.[5] On September 22, 2005, the district court granted the respondent's motion for summary judgment. After Wolfe filed a timely notice of appeal, the court, on November 30, 2005, granted the COA spelled out above, relating to Wolfe's

[5]Because Wolfe properly presented his claims to North Carolina's highest court on direct appeal, he was not obliged to pursue state collateral relief prior to initiating a federal habeas corpus proceeding. *See Brown v. Allen*, 344 U.S. 443, 447 (1953); *Lane v. Warden, Md. Penitentiary*, 320 F.2d 179, 181 (4th Cir. 1963).

claim that his federally protected due process rights had been contravened.

## II.

We review de novo a district court's award of summary judgment. *See Robinson v. Polk*, 438 F.3d 350, 354 (4th Cir. 2006). Pursuant to the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may award habeas corpus relief on a claim that was adjudicated on its merits in state court only if (1) the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Moreover, in a federal habeas corpus proceeding, a finding of fact made by a state court is presumed to be correct, and the federal petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *See id.* § 2254(e)(1).

## III.

### A.

Pursuant to the COA, Wolfe first contends that the trial court used constitutionally deficient procedures in determining his competency to stand trial. On direct appeal, however, the Court of Appeals of North Carolina rejected that assertion. *See State v. Wolfe*, 577 S.E.2d 655 (N.C. Ct. App. 2003). Accordingly, Wolfe may obtain relief on this contention only if he establishes that the state court's ruling in that regard was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). He has failed to make such a showing.

The Supreme Court spelled out the standard governing mental competency determinations in *Drope v. Missouri*, 420 U.S. 162 (1975): pursuant to the Due Process Clause of the Fourteenth Amendment, a state-court defendant is entitled to a procedure that is "ade-

quate to protect" his right against being tried while incompetent. *Id.* at 172. Here, Wolfe was afforded substantial procedural protections against such a violation of his constitutional rights. Nearly four months before trial, on the prosecution's motion, the trial court ordered that Wolfe undergo a competency evaluation. Pursuant to that order, Dr. Rollins examined Wolfe and reported that he was competent to stand trial. The court then conducted its October 2, 2004 hearing on Wolfe's competency, and ruled that he was competent. Two days later, when informed by defense counsel that Wolfe's mental condition had worsened, the court ordered another evaluation, then continued the trial until October 10, 2004. After this continuance, the court resumed its inquiry into Wolfe's competency, hearing testimony from Dr. Rollins and again ruling that Wolfe was competent to be tried.

Wolfe maintains that these procedural protections, although extensive, were nonetheless inadequate to protect his constitutional rights, because of a single asserted defect in the trial court's precautions: its denial of the trial continuance requested by Wolfe's counsel at the October 2, 2004 competency hearing. At that hearing, Wolfe's lawyers sought to postpone his trial in order to further review the Rollins Report. They did not, however, assert that Wolfe was incompetent, and they proffered no evidence to that effect despite nearly four months' notice that his competency was at issue. Moreover, when the inquiry into Wolfe's competency continued on October 10, 2004 — more than a week after defense counsel sought a continuance to review the Rollins Report — the court was again provided with no evidence that Dr. Rollins's methodology or conclusion was defective, or that Wolfe was not competent to be tried.

In these circumstances, we are unable to conclude that the trial court's careful competency proceedings were somehow inadequate to protect Wolfe from being tried while incompetent. When Wolfe's competency was called into question, the court ordered that he be evaluated, conducted a hearing, and received evidence concerning his mental capacity. The evidence proffered during this process uniformly indicated that Wolfe was competent to stand trial. Put simply, the court's procedural safeguards were not rendered constitutionally deficient merely because it refused to grant a continuance of the trial for the further review of an uncontroverted report. The state court

decision therefore did not contravene or unreasonably apply clearly established federal law in ruling that the competency procedures afforded Wolfe were consistent with the requirement of due process.

## B.

In addition to contesting the process used to determine his competency, Wolfe also challenges that process's result — the trial court's finding of fact that he was competent to stand trial. Wolfe maintains that he was, in fact, incompetent when he was tried and convicted, and thus was unconstitutionally denied due process of law. *See Drope*, 420 U.S. at 171-72 ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). Under AEDPA's deferential standard of review, however, the court's finding of fact concerning Wolfe's competency is presumed correct, and Wolfe bears the burden of rebutting it by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Because the state court's factual determination is accorded such broad deference in this habeas corpus proceeding, Wolfe's attack on it carries little force. As we have explained, the only evidence presented to the trial court concerning Wolfe's competency (*i.e.*, the Rollins Report and Dr. Rollins's testimony) indicated that he possessed the requisite capacity to stand trial. The record thus contains no evidence — much less clear and convincing evidence — with which Wolfe can rebut the presumption that the court correctly found him to be competent. Accordingly, we are obliged to deny relief on Wolfe's due process claim that he was convicted while incompetent to be tried.

## IV.

Pursuant to the foregoing, we reject Wolfe's due process claims and affirm the judgment of the district court.

*AFFIRMED*