<u>UNPUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-7381

WILLIAM EUGENE WEBB,

Plaintiff - Appellant,

v.

MATTHEW B. HAMIDULLAH, Warden; Z. R. VENDEL, M.D., Medical
Director; STEVE LABIER, Unit Manager; CHARLES GRUBBS, Unit
Manager; UNITED STATES OF AMERICA,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Rock Hill.  Henry F. Floyd, District Judge.
(0:05-cv-02546-HFF)

Argued:  February 1, 2008            Decided:  June 6, 2008

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Gregory wrote a
dissenting opinion.

**ARGUED:** William Harrison Baxter, II, MCGUIREWOODS, L.L.P.,
Richmond, Virginia, for Appellant.  Barbara Murcier Bowens, OFFICE
OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for
Appellees.  **ON BRIEF:** Reginald I. Lloyd, United States Attorney,
Columbia, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Eugene Webb, a federal inmate, appeals from the district court's order awarding summary judgment to several officials of the Federal Correctional Institute in Estill, South Carolina ("FCI-Estill"), on Webb's Eighth Amendment claims of cruel and unusual punishment. See Webb v. Hamidullah, No. 0:05-cv-02546 (D.S.C. July 24, 2006) (the "Order").[1]  Webb maintains that the award of summary judgment was made erroneously, because he had demonstrated that the Defendants were deliberately indifferent to his medical needs, and that they had retaliated against him.[2]  As explained below, we reject Webb's contentions and affirm.

I.

A.

In September 2005, Webb filed a pro se complaint against the Defendants in the District of South Carolina, alleging that their deliberate indifference to his medical needs and acts of

---

[1]The Order is found at J.A. 651-54.  (Citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2]Webb's constitutional claims are pursued under the authority of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against four Defendants (all FCI-Estill officials), namely:  Matthew B. Hamidullah, Warden; Z. R. Vendel, M.D., Clinical Director; Steven LaBier, Unit Manager; and Charles Grubbs, Counselor.  A separate tort claim being pursued against the United States was dismissed by the district court without prejudice, and that dismissal is also challenged on appeal.

retaliation violated his Eighth Amendment rights. In an amended pro se complaint filed on October 6, 2005, Webb restated his constitutional claims and alleged an additional claim under the Federal Tort Claims Act (the "FTCA claim"). His claims center on alleged medical care deficiencies related to (1) a hernia condition, (2) left forearm problems, and (3) a foot deformity, as well as retaliatory and medically inappropriate prison work assignments. He sought compensatory and punitive damages, as well as injunctive relief, such as proper medical care.

Webb's complaint was referred to a magistrate judge for pretrial proceedings and, on February 3, 2006, the Defendants sought dismissal or, alternatively, summary judgment. After ordering the Defendants to submit additional evidence, the magistrate judge assessed the dispositive motion and, on June 23, 2006, issued his Report and Recommendation. See Webb v. Hamidullah, No. 0:05-cv-02546 (D.S.C. June 23, 2006) (the "Report").[3] The Report recommended to the district court that summary judgment be awarded to the Defendants on Webb's constitutional claims, and that the FTCA claim be dismissed without prejudice.

On July 24, 2006, the district court entered the Order giving rise to this appeal, first ruling that Webb had failed to exhaust his administrative remedies on the FTCA claim as it related to the

---

[3]The Report is found at J.A. 610-36.

3

conduct of officials at FCI-Estill.  The court thus dismissed the FTCA claim without prejudice.[4]  The Order also granted summary judgment to the Defendants on Webb's constitutional claims, adopting the Report of the magistrate judge.

Webb timely noted an appeal from the district court's rulings, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.  Although Webb initially proceeded pro se, we subsequently appointed counsel to represent him on appeal.  Having carefully considered all of Webb's appellate contentions, we summarily reject the majority of them.  We conclude, however, that certain issues surrounding Webb's hernia-related Eighth Amendment claim are worthy of a more thorough analysis, and we therefore dedicate the balance of this opinion to those issues.

B.

1.

Webb, who is fifty years old, is presently serving a 355-month prison sentence, imposed on him in March 2001 in the Middle District of North Carolina.  His medical conditions, which include what is known as a ventral hernia, stem from several gunshot

---

[4]The United States was not designated as a defendant in the amended complaint, the Report, or the Order.  It was, however, named as a defendant in the Judgment Order of July 25, 2006.  The Judgment Order correctly named the United States, the only proper defendant in the FTCA claim.  See 28 U.S.C. § 2674.

wounds.[5]   While awaiting his initial designation to a federal prison facility, Webb was hospitalized for hernia complications and kidney failure.   He received emergency hernia surgery on May 10, 2001, and was transferred soon thereafter to the Springfield, Missouri, prison medical facility.   With the exception of a few weeks in early 2003, Webb was at Springfield until January 2004.

In September 2003, a surgical consultant at Springfield observed that scar tissue from Webb's 2001 hernia surgery was infected, and recommended surgical repair.   A second surgical consultation in December 2003 revealed that Webb had "an extremely enlarged ventral incisional hernia," and required "surgical intervention" to excise scar tissue that "inhibited and hindered potential success for repair."   J.A. 308.   Webb was scheduled for such surgery on January 2, 2004, at an off-site hospital.   On the morning of surgery, however, he refused to be transported to the hospital, apparently due to animosity towards the correctional officer who was to accompany him.   Webb also refused to sign a Medical Treatment Refusal form that alerted him to the possible consequences of foregoing surgery, including "worsening of hernia, strangulation of hernia, bowel obstruction, death."   Id. at 311.

---

[5]In an affidavit of January 10, 2006, Dr. Vendel defines a hernia as "the protrusion of an organ or tissue through a weak area in the muscles or tissue that surround and contain it."   J.A. 314. A ventral hernia occurs "on the front wall of the abdomen," generally resulting from the breakdown of muscles near an old incision.   Id. at 315.

His prison medical file simply reflects that Webb "refused surgery." Id. at 309.

2.

Webb was transferred from Springfield to FCI-Estill on June 16, 2004. During a routine physical examination soon thereafter, FCI-Estill officials learned of Webb's medical conditions, including his ventral hernia. Prison records indicate that Webb did not complain of chronic pain at the intake screening. He was initially assigned to work as a yard orderly — an assignment that required him to pick up or sweep trash around the facility, occasionally mow and trim grass, and sweep sidewalks. Dr. Vendel, the Clinical Director at FCI-Estill, oversaw the treatment of Webb's medical problems.

Webb contends that, less than a week after his arrival at FCI-Estill, he began requesting follow-up medical care and treatment for his hernia problem, including the provision of a new abdominal binder (or hernia belt) to control it.[6] The details of Webb's medical condition, as documented in the FCI-Estill records, are summarized as follows:

- On July 21, 2004, Webb was placed on convalescent status for one week.[7]

---

[6]In Webb's affidavit and in the medical records, the terms "hernia belt" and "abdominal binder" appear to be used interchangeably.

[7]Convalescent status, as defined on FCI-Estill work classification forms, refers to a "[r]ecovery period for operation,

- On July 30, 2004, a consulting general surgeon recommended "laparoscopic ventral hernia [surgery]." J.A. 356. According to notations in Webb's medical file dated August 2, 2004, Webb was advised that he "needs surgery of ventral hernia," and apparently requested "convalescence until surgery." Id. at 43. Webb was placed on idle status for two weeks between August 20 and September 3, 2004.[8]

- On September 7, 2004, Webb was reassigned to work as a unit orderly, wiping down walls and handrails, with two restrictions: "no lifting over 10 lbs" and "no prolonged standing." J.A. 165.

- At least twice in September 2004, Webb complained of extreme abdominal pain.[9]

- On September 24, 2004, Dr. Vendel noted that Webb demanded hernia surgery; that he had refused surgery in January 2004; that his hernia condition was reducible; that he had a hernia belt; and that "[o]ur consultant [in July 2004] recommended hernia repair but did not indicate that it was medically necessary." J.A. 330.[10] Dr. Vendel sought a second

---

injury, or serious illness," during which convalescing inmates enjoy "full institutional privileges and limited recreational privileges, subject only to medical limitation." J.A. 163.

[8]Idle status, as defined by FCI-Estill, refers to a "[t]emporary disability." J.A. 163. Inmates on idle status are "restricted to [their] room except for meals, religious services, [and] sick call," with no recreational privileges. Id.

[9]On September 18, 2004, Webb complained that he was "experiencing abdominal pain" that was "extreme at times." J.A. 59. On September 20, 2004, Webb added that his extreme pain had continued "for months." Id. at 60. On September 27, 2004, Webb reported that he had injured himself while working: "My Hernia is causing me severe pain and my broken arm and dislocated wrist-joint, has swollen and causes me severe pain." Id. at 65.

[10]Dr. Vendel has explained that a reducible hernia exists when the protruding organ, tissue, or fat "can be pushed back into the abdominal cavity," causing the hernia to "flatten and disappear."

7

surgical consultation "about timing the hernia repair and probability of recurrence." Id.[11]

- On September 29, 2004, Webb was examined by another consulting surgeon, who observed a "new bulge on [Webb's] abdomen," that was "not painful" but had increased in size over the prior two years. J.A. 357. The surgeon recommended "a laparoscopic repair" of the hernia, with "at least 3 to 4 days in the hospital." Id. at 358.

- On October 1, 2004, Dr. Vendel examined Webb again, noting complaints of constipation and abdominal pain, but concluding that he "appeared not [to be] in acute distress." J.A. 331.

- On October 4, 2004, Dr. Vendel recorded a treatment plan in Webb's file: "I have discussed this case [with] the g[eneral] surgeon. We agreed that the surgery is not urgent, [and] can be done electively within a time frame of 6 [months]." J.A. 332.

- On October 13, 2004, Webb requested a new abdominal binder "to replace the extremely worn abdominal binder, to-which [sic] I am currently forced to wear daily." J.A. 64. Webb complained that his old binder was "the only thing slowing the enlargement of this hernia," and that "the hernia is currently causing me serious pain and discomfort, due to the worn and old [b]inder I am currently forced to wear." Id. In responding, Dr. Vendel did not mention Webb's request for an abdominal binder, but confirmed, "[y]ou are going to be scheduled for surgery, electively." Id.

- On December 21, 2004, the medical staff examining Webb on a flu-related visit noted that his hernia

---

J.A. 315. By contrast, a non-reducible hernia cannot be pushed back in; it "requires surgical repair, because the protrusion can contain intestine, which can lose its blood supply and die if it become[s] tightly trapped." Id.

[11]On September 24, 2004, Dr. Vendel noted that Webb had "refused surgery" in January 2004; Dr. Vendel also recommended performing "herniotomy, electively." J.A. 360.

8

was reducible, and that he did not complain of any pain. J.A. 336.

- On March 8, 2005, Dr. Vendel noted that Webb's "reducible" hernia was causing "mild pain," and prescribed pain medication. J.A. 340-41.

- On April 28, 2005, Webb's medical restrictions of "light duty" and "no prolonged standing" were renewed due to his hernia condition. J.A. 342.

- On May 25, 2005, Webb filed an informal prison complaint, asserting hernia enlargement and requesting to be relieved from his work assignment until elective hernia surgery was performed. J.A. 91. Webb's request was denied.

- On June 21, 2005, Webb filed another informal complaint, requesting that he be provided with hernia surgery "with imminence." J.A. 90.

- On June 23, 2005, Webb filed yet another informal complaint, asserting that his work assignment aggravated his abdominal condition, and requesting "convalescent [i]dle [s]tatus." J.A. 218.

- On August 3, 2005, Dr. Vendel re-examined Webb. Although Webb complained of extreme pain, Dr. Vendel observed no objective signs of such pain — "no tachycardia, no sweating, no facial expression other than being angry" — and rated Webb's pain level at 6 on a scale of 0 to 10. J.A. 345. Dr. Vendel noted that the size of Webb's hernia was "unchanged," and that the bulge was "easily reduced." Id. He acknowledged that Webb "may need a new hernia belt," and referred him to an orthopedic surgeon for a second opinion. Id.

- Prison records dated August 10, 2005, reflect that "one hernia belt [was] provided" to Webb. J.A. 583.

- On August 24, 2005, Dr. Vendel examined Webb again, noting mild pain and no change in the size of his reducible hernia. Concerning treatment, Dr. Vendel wrote that Webb "may have [an] abdominal hernia belt." J.A. 349.

9

- In his January 10, 2006 affidavit, Dr. Vendel stated that Webb's hernia was "still reduceable [sic] and controlled with the use of a hernia belt." J.A. 316.

- On February 9, 2006, Webb filed another informal prison complaint, alleging that he had requested an abdominal binder on arriving at FCI-Estill; that on August 10, 2005, he was issued a "back-brace," not a hernia belt; and that the back brace "doesn't help at all." J.A. 584. Webb requested to be "promptly provided the abdominal binder as ordered by Dr. Vendel[] about July and/or August of 2005." Id.

- On March 2, 2006, FCI-Estill staff met with Webb and confirmed that "a new binder was ordered to replace your old binder . . . and upon receipt will be issued to you." J.A. 584.

- In his affidavit of March 28, 2006, Webb stated that he "was never provided with a hernia belt." J.A. 398.

- On March 30, 2006, Dr. Vendel examined Webb again. On April 27, 2006, he noted in Webb's medical records that Webb's hernia was a "5 x 4 cm bulge, minimally symptomatic," and that "surgery can be done as I approved it before[,] electively." J.A. 586. That same day, Dr. Vendel recommended that the proposed elective surgery be scheduled.

- In his affidavit of May 8, 2006, Dr. Vendel stated that Webb was issued a hernia belt on August 10, 2005, and that "on March 2, 2006, a new hernia belt was ordered and Mr. Webb was instructed that once it arrived it would be issued to him." J.A. 578. Vendel noted that he had requested Webb's hernia surgery be scheduled, "although this surgery is an elective procedure." Id.

Addressing the hernia claim allegations in the Report, the magistrate judge concluded that Webb had presented no evidence suggesting that surgery was medically required (rather than properly deemed elective), or that surgery had been unduly delayed.

10

See Report 18-20.  The magistrate judge further determined that Webb's assertion "that he was never provided with a hernia belt is . . . contradicted by the medical records," and that, "even assuming there was a delay in [Webb's] receipt of a hernia belt, . . . the medical evidence before the Court shows that [Webb's] hernia remains reducible, with no evidence having been presented that [Webb] has suffered any injury as a result of the delay in receiving a hernia belt."  Id. at 20.  The Order adopted this aspect of the Report without specific comment.


II.

We review de novo a district court's award of summary judgment.  See Wolfe v. Weisner, 488 F.3d 234, 238 (4th Cir. 2007). In so doing, we apply the same standard as the district court: whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In conducting such a review, we are mindful that a mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  However, in determining whether a genuine issue of material fact is in dispute, "the

11

evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

III.

On appeal, Webb challenges the district court's award of summary judgment to the Defendants on his Eighth Amendment claim with respect to his hernia problems — asserting that his medical care was so deficient as to constitute deliberate indifference to his objectively serious medical needs. See U.S. Const. amend VIII; Estelle v. Gamble, 429 U.S. 97, 104 (1976). As a general proposition, a medical need may be deemed objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); see also Loe v. Armistead, 582 F.2d 1291, 1292-93, 1295-96 (4th Cir. 1978). In order to act with deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment."); see also Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

12

In this situation, it is undisputed that Webb suffers from a ventral hernia and that, in the proper circumstances, such a condition might be recognized as serious. See, e.g., Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006) (holding that hernia can be objectively serious medical problem); Jones v. Johnson, 781 F.2d 769, 771-72 (9th Cir. 1986) (same). In the context of his constitutional claim, Webb contends that the Defendants were deliberately indifferent to his medical needs in three respects: (1) in prescribing hernia surgery on an elective basis only; (2) in unduly delaying such surgery; and, (3) in failing to provide him with the hernia belt that he needed.[12] We review in turn these aspects of Webb's claim.

A.

Webb first maintains, in pursuing his Eighth Amendment claim, that the Defendants were deliberately indifferent to his need for surgery by prescribing such surgery for him on an elective basis only. Although the consequences of failing to prescribe an essential surgical procedure can be serious, any medical malpractice committed with respect thereto, or malpractice committed by mischaracterizing an emergency surgical procedure as

_____

[12]In his hernia-related claim, Webb's allegations of deliberate difference relate only to Dr. Vendel. He does not allege that the other Defendants bear any liability for Dr. Vendel's acts or omissions. In the absence of allegations of supervisory liability, the district court properly awarded summary judgment to the other Defendants. See Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979).

13

an elective one, will not contravene the Eighth Amendment. Put simply, negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference. See Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986).

And, in this case, Webb has failed to show any deliberate indifference on the part of Dr. Vendel with respect to the "elective surgery" classification of Webb's hernia problem. The record reflects that, shortly after Webb's transfer to FCI-Estill, Dr. Vendel sought and obtained supporting medical opinions classifying Webb's surgery as elective. Based on those consultations, Dr. Vendel himself concluded, in October 2004, that Webb's need for hernia surgery was "not urgent, [and] can be done electively within a time frame of 6 [months]." J.A. 339. After Webb filed informal prison complaints in May and June 2005, requesting hernia surgery "with imminence," id. at 90, Dr. Vendel examined Webb twice in August 2005, but found no objective signs of pain and no change in the size of his hernia. In March 2006, after examining Webb's hernia and finding it unchanged, Dr. Vendel renewed his assessment that the "surgery can be done as I approved it before, electively." Id. at 586.

In summary, even if Dr. Vendel somehow misdiagnosed Webb's need for surgery, Dr. Vendel made extensive efforts to diagnose, monitor, and control Webb's hernia symptoms, and that he did not disregard any "risk of harm of which he was aware." See Johnson v.

14

Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (holding that doctors are only deliberately indifferent if they "subjectively 'know[] of' the serious medical condition itself" and consciously disregard a substantial risk of serious harm implied by that condition). The fact that Dr. Vendel consulted other physicians further undermines any contention that his diagnosis, even if incorrect, was somehow deliberate or indifferent. See id. at 169 (concluding prison physician's consultation with outside experts supported inference that misdiagnosis was not deliberate indifference). Thus, the court properly concluded in its Order that Dr. Vendel's classification of Webb's potential surgery as elective — rather than as an emergency — does not implicate Webb's Eighth Amendment rights.

B.

Turning next to the delay aspect of Webb's Eighth Amendment claim, he argues that the fact that he was never scheduled for elective hernia surgery while at FCI-Estill —despite Dr. Vendel's statement, in October 2004, that "surgery is not urgent, [and] can be done electively within a time frame of 6 [months]," J.A. 332 — supports an inference of deliberate indifference on the part of Dr. Vendel. Under the applicable legal principles, a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation. See Estelle, 429 U.S. at 104-05 (holding that deliberate indifference

may be demonstrated by "intentionally denying or delaying access to medical care").

An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient.[13]  Thus, in order to defeat summary judgment on the delay issue, Webb was obligated to establish that the delay in his surgery caused him substantial harm—evidenced by, for example, a marked increase in his hernia's size, frequent complaints of severe pain, or signs that his hernia was becoming non-reducible or incarcerated.[14]  Cf. Militier v. Beorn, 896 F.2d 848, 852-53 (4th Cir. 1990) (concluding, where inmate suffered heart attack and died, that jury could find physicians were deliberately indifferent by failing to follow up on recommendations for inmate's cardiac care).

Our unpublished decisions recognize that a delay with respect to hernia surgery does not necessarily constitute deliberate

_____

[13]See, e.g., Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (same).  But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware].")

[14]In his affidavit of January 10, 2006, Dr. Vendel explains that "[a] non-reducible hernia requires surgical repair, because the protrusion can contain intestine, which can lose its blood supply and die if it becomes tightly trapped (called 'strangulation' or 'incarceration' of the hernia)."  J.A. 315.

16

indifference, absent some resultant harm or a worsened condition. For example, in Price v. Carey, we deemed an eight-month delay in providing elective hernia surgery as insufficient to constitute an Eighth Amendment violation, because the prisoner "did not present any information" to his physician during the intervening period "to indicate that his situation was an emergency mandating immediate treatment." No. 91-6643, 1992 WL 34208, at *4 (4th Cir. Feb. 26, 1992). On the other hand, in Garrett v. Elko, we recognized an Eighth Amendment claim where the prisoner's hernia surgery was delayed for four years, in the face of continual "complaints of intense pain, anxiety, and limited mobility." No. 95-7939, 1997 WL 457667, at *1 (4th Cir. Aug. 12, 1997).

After October 2004, Webb was prescribed pain medication, and although he frequently complained about hernia-related discomfort, his complaints focused largely on work assignments. See, e.g., J.A. 91 (complaining of hernia enlargement on May 25, 2005, but requesting reprieve from work assignment until elective surgery is performed); id. at 90 (requesting, on June 21, 2005, being provided hernia surgery "with imminence," but failing to assert pain or change in hernia's size as basis therefor); id. at 218 (complaining of increasing pain on June 23, 2005, making work impossible). Moreover, when Webb informed the prison medical personnel that he was in pain, they did not ignore his complaints. Rather, they monitored his condition, observed no objective signs of pain or

17

change in the size of his hernia, provided pain medications, and concluded that the hernia was yet reducible. See J.A. 331 (examining Webb on October 1, 2004, and noting that, despite his complaints of constipation and abdominal pain in September 2004, he "appeared not [to be] in acute distress"); id. at 341 (prescribing pain medication on March 8, 2005, for "mild pain" caused by Webb's hernia); id. at 345 (examining Webb on August 3, 2005, and observing no objective signs of pain or change in size of hernia); id. at 349 (examining Webb on August 24, 2005, and observing no change); id. at 586 (noting that, based on March 30, 2006, examination, Webb's hernia was "minimally symptomatic"). In such circumstances, Webb's allegation of improper delay fails to support the proposition that summary judgment was improperly awarded.

C.

Finally, Webb focuses on the assertion that he was never provided with a hernia belt at FCI-Estill. In addressing this issue, Webb maintains that the magistrate judge and the district court failed to construe the evidence in the light most favorable to him. In the Report (adopted by the Order), the magistrate judge concluded that Webb's assertion that he was never provided with a replacement hernia belt was "contradicted by the medical records." Report 20. On this point, the issue is simply whether Webb has shown that Dr. Vendel acted with deliberate indifference concerning the hernia belt. In his affidavit of May 8, 2006, Dr. Vendel

18

states that "on August 10, 2005, [Webb] was issued a hernia belt by the Health Services Administrator." J.A. 578. By contrast, in an informal prison complaint of February 9, 2006, Webb alleged that, although he had requested a new belt when he first arrived at FCI-Estill in July 2004, he had been given a back brace only (on August 10, 2005).[15] And, in his affidavit of March 28, 2006, Webb asserted that he "was never provided with a hernia belt." Id. at 398.

This apparent dispute of fact on whether Webb received a back brace or a hernia belt on August 10, 2005, fails to establish an Eighth Amendment claim. Put succinctly, Webb failed to complain about the inadequacy of the back brace until February 2006, six months after it was issued to him (on August 10, 2005). In the interim, Dr. Vendel believed that Webb was provided with a hernia belt on August 10, 2005. See J.A. 578 ("[O]n August 10, 2005, [Webb] was issued a hernia belt by the Health Services Administration."). Whether Dr. Vendel was incorrect in this perception could be relevant in a malpractice claim, but it is not material to Webb's Eighth Amendment claim. As a matter of law, Dr. Vendel cannot have consciously disregarded a substantial risk of serious harm to Webb if he did not know that Webb had been provided an ineffectual back brace. See Johnson v. Quinones, 145 F.3d 164,

---

[15]There is no explanation of the differences, if any, between a "back brace," an "abdominal binder," and a "hernia belt." For our purposes, we construe these terms in the light most favorable to Webb, and deem a back brace to be distinct from — and less effective than — an abdominal binder or a hernia belt.

168 (4th Cir. 1998) (holding that, for purposes of establishing deliberate indifference, "[t]he correct question is whether the doctor subjectively 'knows of' the serious medical condition itself"). On this evidence, Dr. Vendel has not been shown to subjectively know that Webb did not have a hernia belt, and thus could not be deliberately indifferent to any of Webb's hernia-related medical needs. As a result, Dr. Vendel cannot be liable on the Eighth Amendment claim. In such circumstances, summary judgment was appropriate, and the Order of the district court must be affirmed.

IV.

Pursuant to the foregoing, we affirm the district court's award of summary judgment on Webb's Eighth Amendment claims, and also its dismissal without prejudice of his FTCA claim.

AFFIRMED

GREGORY, Circuit Judge, dissenting:

Webb has waited over four years to have an "extremely enlarged incisional ventral hernia" removed — a surgery prison medical staff determined could "electively" be done within six months.  It is undisputed that the surgery is necessary, and the only accepted medical procedure for remedying Webb's serious condition.  However, as Webb lingers, the majority, without pause or hesitation, holds that, as a matter of law, the prison medical staff has not been "deliberately indifferent" to his serious medical need to have surgery "absent some resultant harm or a worsened condition." (Maj. Op. 17.)  The Eighth Amendment does not require a prisoner to be on the precipice of death to receive the necessary treatments that the prison medical staff itself prescribed.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court established the standard for Eighth Amendment cases involving prisoner medical needs.  In order to prove an Eighth Amendment violation, the prisoner must show that the defendant acted with deliberate indifference to his serious medical needs, which requires proof of two elements:  (1) that the deprivation of medical care was sufficiently serious (objective component); and (2) that the prison officials were deliberately indifferent to the serious medical needs (subjective component).  Id.  "[D]eliberate

21

indifference entails something more than mere negligence," Farmer v. Brennan, 511 U.S. 825, 835 (1994), but indifference can be manifested by prison doctors intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle, 429 U.S. at 104-05.

It is undisputed that Webb's hernia condition is a serious medical need. See Martin v. Bowman, 48 F.3d 1216 (4th Cir. 1995) ("A medical need is serious if it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention.") The majority's "deliberate indifference" analysis of Webb's Eighth Amendment claim is simple: rather than arguing that he received no medical treatment, Webb only alleges that Defendants conservative course of treatment violates his Eighth Amendment rights and since he was seen numerous times by prison medical staff and outside medical specialists, defendants were not deliberately indifferent. Simplicity notwithstanding, the majority errs.

In September, 2003, a consulting general surgeon recommended that Webb receive "laparoscopic ventral hernia surgery." (J.A. 356.) Based on the alleged reducible nature of the hernia, Dr. Vendel deemed Webb's surgery "elective;" that is, "not urgent" and he posited that surgery could be performed within six months of September 24, 2004. However, only five days after Dr. Vendel's determination that the surgery was "elective," Webb was examined by

a consulting physician, who observed "a new bulge on [Webb's] abdomen," that had increased in size, and recommended laparascopic repair. (J.A. 358.) As the majority correctly notes, Webb complained thirteen times of chronic abdominal pain, and two different specialists recommended surgery during the course of two years after the initial recommendation. Yet, surgery was still delayed and another six months passed without any discussion of scheduling Webb for surgery. While the majority makes much of Webb receiving treatment throughout this time and Dr. Vendel determining that the surgery was "elective," it is clear that Webb did not receive the treatment that was prescribed year after year by several surgeons despite his chronic pain and medical infirmities.

For instance, there is no evidence that Dr. Vendel, after the first six-months passed, determined that Webb could wait another six-months for surgery. In fact, the record suggests otherwise. On August 3, 2005, Dr. Vendel referred Webb, after complaints of extreme pain, to an orthopedic surgeon for a second opinion. It was not until April 27, 2006, nearly three years after surgery was first recommended and five months after Webb filed suit, that Dr. Vendel recommended surgery be scheduled. On March 10, 2006, another orthopedic surgeon confirmed that Webb's hernia had increased and surgery was needed. (J.A. 585.) To be sure, even if a procedure is "elective" - the term certainly should not mean that

23

Webb must wait almost four years for a surgery that Dr. Vendel stated could be scheduled at the very least within six months.

We have held, albeit in an unpublished opinion, that where prison officials are aware of a serious medical need and delay treatment, the plaintiffs' allegations are sufficient enough to satisfy the objective component of a deliberate indifference suit. See Clinkscales v. Pamlico Corr. Facility, 238 F.3d 411 (4th Cir. 2000) (inmate sufficiently alleged deliberate indifference as a result of defendant's nine-month delay in providing a necessary surgery) (citing Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987) (prison officials may not interminably delay medical treatment or deny treatment based on arbitrary and burdensome procedures.)) Here, Webb presented evidence, when viewed in a light most favorable to him - as we must, sufficient to create a triable issue of material fact as to whether the delay constitutes deliberate indifference.

The majority's rationale to the contrary rings hollow in the face of the probability that further delay of Webb's hernia surgery could result in the worsening or strangulation of his hernia, bowel obstruction, or even Webb's death. (J.A. 311.) Deliberate indifference should not turn on whether Webb's condition worsened during the delay and nor should Dr. Vendel's decision to take an easier but less efficacious course negate deliberate indifference. It is the delay, itself, that is deliberately indifferent. As the

24

Supreme Court stated in Estelle, an unreasonable delay or withholding of treatment can constitute deliberate indifference and, therefore, offend the Eighth Amendment. Estelle, 429 U.S. at 104-05.

It is uncontroverted that Webb suffers from a serious medical condition that requires surgery. Merely providing a prisoner with some treatment is not the Constitutional mandate of the Eighth Amendment. Rather, it is providing a prisoner with the care he or she needs. Prisoners are deprived of freedom and stripped of most rights but the Eighth Amendment guarantees that they not be treated less than human. So I ask, is it humane for a prisoner, who has suffered for four years with a serious medical condition, to be waiting for a surgery that everyone agrees is necessary? Based upon the majority's reasoning, it is uncertain how long Webb must wait for medical treatment before he can make out an Eighth Amendment claim that would at least survive summary judgment. Because surely his protection under the Eighth Amendment has not deteriorated to such an anemic state, I dissent.