**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-7418**

MICHAEL FORMICA,

        Plaintiff – Appellant,

    v.

F.G. AYLOR, Superintendent of Central Virginia Regional Jail; MAJOR DYER; AMANDA PITTS, Supervisor of Nurses,

        Defendants – Appellees,

    and

CATTLEMAN'S BEEF PRODUCTS,

        Defendant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Glen E. Conrad, Senior District Judge. (7:14-cv-00449-GEC-JCH)

Argued: December 5, 2017                   Decided: June 25, 2018

Before WILKINSON, KING, and FLOYD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge King wrote the majority opinion, in which Judge Floyd joined. Judge Wilkinson wrote an opinion concurring in part and dissenting in part.

Michael William Stark, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Carlene Booth Johnson, PERRY LAW FIRM, PC, Dillwyn, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Michael Formica, a Virginia inmate, appeals from the award of summary judgment made by the district court in favor of three officials at the Central Virginia Regional Jail (the "Jail") with respect to his 42 U.S.C. § 1983 constitutional claims. The gravamen of Formica's claims is that — in denying, interfering with, and delaying his treatment for diseased, broken, and abscessed teeth — the Jail officials were deliberately indifferent to his serious medical needs, in contravention of his Eighth Amendment rights. Having considered Formica's challenge to the district court's summary judgment award, we affirm in part, vacate in part, and remand.

I.

A.

On August 25, 2014, Formica filed his pro se complaint in the Western District of Virginia, alleging under 42 U.S.C. § 1983 that the Jail officials were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. The defendants are Medical Supervisor Amanda Pitts, a licensed practical nurse who is identified in the complaint as the Supervisor of Nurses; Major Frank Dyer, who supervises Pitts; and Jail Superintendent F.G. Aylor.[1] Formica's two § 1983 deliberate

---

[1] Formica's pro se complaint named a fourth defendant called Cattleman's Beef Products — the source of a steak that allegedly damaged one of his teeth. Moreover, the district court construed the complaint to allege various claims in addition to the § 1983 deliberate indifference claims. The court dismissed all claims against Cattleman's Beef for failure to allege that it was a state actor, and all but the § 1983 deliberate indifference (Continued)

3

indifference claims involve (1) his tooth 32 (the "Wisdom Tooth") and (2) his tooth 5 (the "Molar"), each of which was finally extracted after many months of requests and recommendations for treatment made by Formica and the Jail dentist. Formica primarily seeks relief in the form of damages.

In December 2014, the Jail officials moved to dismiss Formica's pro se complaint for failure to state a claim upon which relief can be granted. In response, the district court, on August 5, 2015, denied dismissal of the two § 1983 deliberate indifference claims. The court then referred those claims to the magistrate judge for a report and recommendation. Soon thereafter, the Jail officials filed an answer and moved for summary judgment, and supported the motion with affidavits and related exhibits. They also sought summary judgment on the basis of qualified immunity. The magistrate judge evaluated the summary judgment requests and, on February 12, 2016, filed his report and recommendation with the court. *See Formica v. Aylor*, No. 7:14-cv-00449 (W.D. Va. Feb. 12, 2016), ECF No. 63 (the "Recommendation").

In assessing the Wisdom Tooth claim, the magistrate judge concluded that Formica had not demonstrated that the tooth presented a serious medical need. That is, although the judge concluded that there was a delay in treatment of that tooth that was attributable to Nurse Pitts, the delay could not constitute deliberate indifference, because Formica had not shown a resultant substantial harm or even the risk of such a harm. The

claims against the Jail officials for failure to state a claim upon which relief can be granted. Those rulings are not challenged on appeal.

Recommendation was thus to award summary judgment to each of the Jail officials on the Wisdom Tooth claim.

By contrast, in considering the Molar claim, the magistrate judge concluded that the condition of the Molar was serious and characterized as "intolerable" the delay in the treatment of Formica's "progressively degenerating tooth condition that could have been resolved relatively simply." *See* Recommendation 22. The judge recognized that Nurse Pitts "was either directly involved in, or a reasonable inference can be drawn that she had knowledge of and tacitly approved," the delay in the Molar treatment despite Formica's known and obvious serious medical condition. *Id.* The judge also determined that Major Dyer could be found responsible for the delay. According to the judge, the delay "resulted in a worsened condition and significant harm." *Id.* The Recommendation was thus that Pitts and Dyer be denied summary judgment on the merits — as well as on qualified immunity — with respect to the Molar claim. On the other hand, the judge recommended awarding summary judgment to Superintendent Aylor because he had no role in delaying treatment of the Molar.

On August 26, 2016, the district court filed its decision underlying this appeal, adopting the Recommendation in part and rejecting it in part. *See Formica v. Aylor*, No. 7:14-cv-00449 (W.D. Va. Aug. 26, 2016), ECF No. 76 (the "Opinion"). More specifically, the court awarded summary judgment to the three Jail officials on the merits of both § 1983 claims. The Opinion blamed outside circumstances and Formica himself for much of the delays in treatment of the Wisdom Tooth and the Molar. Furthermore, the Opinion cited a lack of evidence that Formica had a serious medical condition during

5

any delay in the Wisdom Tooth treatment. To the extent that the court concluded delay in the Molar treatment was attributable to the Jail officials, the Opinion reasoned that the officials did not act with deliberate indifference, in that they initially had a reasonable belief that Formica did not have a serious medical condition and then acted reasonably when they came to perceive that he was at risk of substantial harm. The court also deemed summary judgment to be appropriate because Formica had not shown that any delay had resulted in substantial harm, such as by exacerbating his Wisdom Tooth or Molar conditions or by prolonging his pain.

The district court thereafter denied Formica's motion for reconsideration of the summary judgment award to the Jail officials. Formica timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[2]

B.

The record reflects that, in January 2012, Formica began serving time at the Jail, which is located in Orange, Virginia.[3] When Formica arrived at the Jail, he was given the Inmate Handbook, which describes, inter alia, the medical and dental services provided to

---

[2] Formica represented himself pro se in the district court. Although he requested an appointment of counsel on several occasions, those requests were denied. Formica initially proceeded pro se in this appeal, but we appointed appellate counsel.

[3] Because we are assessing whether summary judgment was properly awarded to the Jail officials, we are obliged to accept the facts and the reasonable inferences drawn therefrom in the light most favorable to Formica. *See FOP Lodge No. 89 v. Prince George's Cnty.*, 608 F.3d 183, 188 (4th Cir. 2010).

Jail inmates.  *See* J.A. 240-48.[4]  The Handbook provides, for example, that an inmate's pre-existing dental conditions will be addressed when they present a serious risk to life or health.  Inmates can be charged a copay of $10 for non-emergency dental visits and are required to pay for any outside treatments for pre-existing conditions.  The Handbook emphasizes — in capital letters — that "NO INMATE WILL EVER BE DENIED MEDICAL SERVICES DUE TO AN INABILITY TO PAY!"  *Id.* at 243.[5]

---

[4] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[5] In pertinent part, the Inmate Handbook further explains how medical and dental problems are dealt with at the Jail.  It emphasizes the importance of whether such problems are pre-existing and how the inmates are sometimes partially financially responsible for treatments.  More specifically, the Handbook states:

> Inmates with medical and/or dental problems which did not happen during confinement and which represent pre-existing conditions may be dealt with only in so far as these matters present a serious risk to life or health, as determined by the Jail Physician.  Inmates will be required to be financially responsible for the outside treatment of pre-existing conditions.  . . . Inmates will be charged a fee of $10.00 for a doctor's call, nurse's call or dental call[.]  . . .  NO INMATE WILL EVER BE DENIED MEDICAL SERVICES DUE TO AN INABILITY TO PAY!  However, indigent inmates will have their commissary accounts placed in a negative balance.

> \* \* \*

> Generally extractions and temporary fillings are the dental services provided.  Dentures, crowns, caps, root canals, permanent fillings, etc. are not provided by the Jail except where dental problems indicate a serious risk to the inmate's health. These services are the financial responsibility of the inmate.

*See* J.A. 243-44.

The Jail officials and Formica each filed affidavits and other materials supporting their respective positions on summary judgment.[6] Superintendent Aylor's affidavit explains, inter alia, that an inmate is treated for all dental problems that present "a serious risk to the life or health of the inmate, regardless of whether the condition pre-existed the inmate's incarceration at the Jail, and that no such treatment would be denied an inmate due to his inability to pay for it." *See* J.A. 367. Aylor emphasized that the Jail would never deny an inmate necessary care by the in-house dental program. Although there was a $10 copay for each dental visit — unless the visit was recommended by the Jail dentist — Aylor explained that "inmates who did not have money in their account would still be seen by the dentist upon request, and a negative balance simply would be placed on their account." *Id.* at 368. Regarding the availability of dental services by outside providers, the Superintendent explained that

> *inmates who had a serious medical need* that required such services, as determined by the appropriate medical person, would also never be denied such services, regardless of whether the need arose from a pre-existing condition, and *would never be denied such services due to an inmate's ability to pay*.

*Id.* (emphasis added).

---

[6] The record includes Formica's relevant Jail dental records, written communications of Formica with Jail personnel, an affidavit of each Jail official, and two affidavits of Formica. Nurse Pitts filed more than forty exhibits with her affidavit. The record does not include, however, traditional evidence developed through discovery, such as depositions, answers to interrogatories, and admissions.

8

C.

According to Formica's affidavit opposing summary judgment, he was evaluated by the Jail dentist within two weeks of his arrival at the Jail in January 2012. Formica's initial examination revealed impacted wisdom teeth that needed to be extracted, but the dentist said that there "were no cavities, broken, cracked, or damaged teeth." *See* J.A. 590. Formica recited that his Wisdom Tooth broke in late June 2013 and was extracted approximately six months later in mid-January 2014. He discovered a cavity in the Molar in late January 2014 and was scheduled for the Molar's extraction in late January 2015. Additional details concerning those dental problems are spelled out below.

1.

On June 30, 2013, Formica notified the Jail medical department that he had broken his Wisdom Tooth while eating a steak. Formica submitted a request the next day to see the Jail dentist, advising that the broken tooth was painful and had caused his tongue to swell from rubbing against its jagged edges. Formica also requested pain relief medication. He expressed concerns about a blood thinning medication he was taking for a heart condition, specifically asking whether it would complicate dental procedures. In response, Formica was given Tylenol and scheduled to see the Jail dentist.

On July 12, 2013, the Jail dentist examined Formica and acknowledged that the Wisdom Tooth had "gross decay." *See* J.A. 253. The dentist smoothed the jagged edges of the tooth and prescribed antibiotics and a pain reliever. The dentist confirmed in his treatment notes that Formica was "medically compromised" due to blood thinning medication and thus recommended his referral to an outside oral surgeon for extraction of

9

the Wisdom Tooth.  *Id.*  Importantly, the Jail dentist placed a star next to his "Dental Note" that read, "[R]efer to oral surgeon for ext[raction]."  *Id.*

Nurse Pitts, however, failed to understand that the dental notes revealed a broken Wisdom Tooth or any other serious dental condition that might require an extraction or additional treatment.  Pitts instead decided that extraction of the Wisdom Tooth by an outside surgeon was an elective procedure.  That is, the extraction was only necessary if Formica wished to proceed with it and had the funds to pay for it.  Relying on Pitts, Major Dyer had the same understanding.

Three weeks later, on July 29 and August 1, 2013, Formica reported that he was yet in pain and asked why he had to pay to have his Wisdom Tooth extracted.  He contended that the Jail should be responsible for the extraction costs because the tooth had cracked on a steak in the Jail dining hall.  As a result, Nurse Pitts consulted with Major Dyer and scheduled Formica for a reevaluation by the Jail dentist.  At the reexamination conducted on August 9, the Jail dentist determined that the Wisdom Tooth "seemed to be compromised from cavities" and noted that Formica "said nothing about the tooth being broken while incarcerated."  *See* J.A. 259.  Nevertheless, the Jail dentist again recommended the referral of Formica to an outside oral surgeon for extraction of his Wisdom Tooth.

Nurse Pitts and Major Dyer again considered the extraction recommended by the Jail dentist to be elective.  They also concluded that the decayed Wisdom Tooth was a pre-existing condition that did not present a serious medical condition that required treatment.  Pitts did not schedule an extraction of the Wisdom Tooth by an outside oral

surgeon because Formica did not have the funds in his account to pay for the extraction and because — notwithstanding the two contrary determinations by the Jail dentist — she decided that "there was no serious medical need . . . that required extraction or further treatment." *See* J.A. 224.

On August 10, 2013, the day after the Jail dentist's reexamination of the Wisdom Tooth, Formica sought information about having his family pay for an extraction. In response, Nurse Pitts explained to Formica that sufficient funds for an extraction of the Wisdom Tooth had to be on deposit in his Jail account before the extraction could be scheduled. More than two months later, in late October, Formica's family deposited funds for an extraction of the Wisdom Tooth into his inmate account. Formica then requested that the extraction be scheduled and authorized payment from his inmate account for the oral surgery.

On November 15, 2013, Formica was taken to an outside oral surgeon for consultation. The oral surgeon examined Formica, took x-rays, and determined that half of the Wisdom Tooth's clinical crown was missing. The oral surgeon — like the Jail dentist in July and August — also recommended extraction of the Wisdom Tooth. The surgeon estimated that the extraction would cost $1015 and scheduled it for December 17. Due to complications from Formica's blood thinning medication, however, the extraction of the Wisdom Tooth was not performed until January 13, 2014.

11

2.

a.

Approximately two weeks after the Wisdom Tooth was extracted, Formica identified problems with the Molar. On January 30, 2014, Formica advised Jail personnel that, after the extraction, he had a "sharp pain" every time the "air hits an area of [his] mouth . . . like a filling got knocked out." *See* J.A. 310. Because of the timing and the sharp pain, Formica concluded that the pain problem had been caused by the extraction of his Wisdom Tooth. Formica also asserted that his pain was "getting worse" and that he had sought treatment. *Id.* at 310-12. Formica was again scheduled to see the Jail dentist.

On February 7, 2014, the Jail dentist x-rayed and examined an area of Formica's mouth where he complained of discomfort. The dentist reported no significant findings, and Formica's inmate account was charged $10. Later that day, however, Formica complained that his pain was emanating from a decayed tooth on the other side of his mouth, near where the extracted Wisdom Tooth had been located. He also said he could not understand how the Jail dentist missed the hole in the Molar because other inmates could see it. A few days later, Formica requested another evaluation by the Jail dentist, but contested the $10 copay. Formica reported that another supervisor — Captain Ryder — had said that Formica would not have to pay for a follow-up appointment if his pain persisted. The Jail's medical department — supervised by Nurse Pitts — disagreed and instead informed Formica that he had to satisfy the copay to be reevaluated, because "[t]here is no refund after you have seen the dentist." *See* J.A. 319. No follow-up appointment was scheduled.

b.

About a month later, on March 10, 2014, Formica requested a temporary filling of the cavity in the Molar that the Jail dentist had overlooked, advising that "the tooth really hurts now." *See* J.A. 323. Formica was then scheduled to see the Jail dentist on March 21. Another supervisor, Captain Deane, cancelled that appointment when Formica declined to make the $10 copay. The Recommendation of the magistrate judge included a determination that the cancellation of Formica's March 10 appointment contravened Jail policy, in that the Inmate Handbook provides that an inmate will not be denied treatment if he is unable to make the copay. The Recommendation recognized that Nurse Pitts — as medical supervisor — knew that Captain Deane had contravened Jail policy by cancelling Formica's March 10 appointment, but did nothing to correct it.

About two months later, on May 25, 2014, Formica notified the Jail medical department that his Molar was cracked. He also complained of being wrongly denied dental treatments because of his indigent status and his refusal to make the $10 copay. Formica threatened to file a lawsuit, asserting that the cracked Molar could have been avoided if the Jail dentist and medical department had properly treated his cavity. Pitts directed him to the Inmate Handbook and its provision that visits to the Jail dentist cost $10 unless the dentist schedules a follow-up visit. Formica responded that a follow-up with the Jail dentist would be futile because he had already failed to treat the cavity in the Molar. On May 27, Formica requested an examination by an outside dentist. Under the rules, however, the Jail dentist had to recommend such a referral. On May 31, Formica agreed to again see the Jail dentist.

13

c.

On June 13, 2014, the Jail dentist examined Formica, took x-rays of the Molar, and found a large cavity with possible tissue involvement. Formica hoped to save the Molar, but the Jail dentist could "not fix the problem" and recommended that Formica be referred to an outside oral surgeon. *See* J.A. 597. Nurse Pitts was promptly advised of the Jail dentist's evaluation of the Molar and the representations made to Formica by the Jail dentist.

After that examination and referral recommendation by the Jail dentist, Formica filed four additional requests — on June 14, 18, 22, and 24, 2014 — seeking to have the problems with his Molar addressed. Formica also sought treatment at an outside dental facility in compliance with the Jail dentist's recommendation. Nurse Pitts, however, refused to schedule any appointments with an outside dental facility until Formica had sufficient funds in his inmate account to pay for the treatments. She viewed Formica's tooth condition as not "something that the dentist believed was either a serious medical need or needed to be dealt with by an outside facility," in that "Formica's blood thinner had been discontinued in March 2014." *See* J.A. 232. She also believed that Formica could afford the outside treatment.

On June 24, 2014, Formica complained about having to make copayments for treatment of his Molar for a condition that was caused by his previous oral surgery, and he also requested a cost estimate for the treatment. The Jail obtained an estimate of $350 for the outside oral surgeon to treat the Molar, and Major Dyer informed Formica that he was financially responsible for all dental treatments. On July 10, Formica requested a

14

grievance form, maintaining that the Molar was not broken prior to the extraction of his Wisdom Tooth in January, and that he had sought to have the large cavity in the Molar fixed on two occasions before it deteriorated and broke apart. Instead of providing him with a grievance form, however, Nurse Pitts responded that Formica had to pay $350 for the outside oral surgeon appointment. The next day, July 11, Formica again requested a grievance form and demanded that Superintendent Aylor be apprised of his situation. Formica maintained that he did not need the money to see the outside dentist because, as an inmate, he was entitled to dental treatment for a serious medical condition. On August 25, 2014, Formica filed his pro se complaint in this case in the district court, alleging the § 1983 claims.

d.

In September 2014, Formica continued to pursue dental care for the Molar. He sought to see the Jail dentist because the Molar was infected and he was concerned that the infection would spread. The Jail dentist examined Formica on September 19 and observed that the Molar had "gross decay" and "little clinical crown" and that he was experiencing pain. *See* J.A. 345. The Jail dentist prescribed antibiotics and ibuprofen and advised Formica that the Jail staff should "send [him] out." *Id.* at 411. Once again, the Jail dentist "recommend[ed] referral to oral surgery" to "please ext[ract] #5 [the Molar]." *Id.* at 345.

On September 22, 2014, Nurse Pitts sent a memorandum directly to Formica, confirming that the Jail dentist had recommended that he be referred to an outside oral

surgeon for the Molar extraction, and that the estimated cost was $462. She directed him to

> let medical know if you would like to move forward with scheduling this. As you are aware from past dental appointments you will need the money [in your] inmate account before we can schedule this.

*See* J.A. 180. As the magistrate judge emphasized, Pitts did not mention her September 22 memorandum to Formica in her affidavit supporting summary judgment. That same day, however, in a letter to Pitts, Formica protested being required to have sufficient funds in his inmate account before the Jail would schedule oral surgery for the Molar extraction, asserting that Pitts could "not simply deny health care to indigent inmates because of money." *Id.* at 43.

Formica thereafter submitted additional written requests expressing concern about the infected Molar and its impact on his overall health, particularly in light of his heart condition. He complained about the denials and delays of treatments for the Molar and repeatedly asked to be seen by an outside oral surgeon as the Jail dentist had recommended on September 19, 2014. Formica emphasized that the Jail dentist had referred him to the outside dentist because of the serious condition of the Molar. He argued that the Jail dentist's medical directives were being rejected and interfered with, depriving him of necessary dental care.

On September 23, 2014, Nurse Pitts responded to Formica that the Jail was "not denying you to go to the dentist; however[,] you are responsible for the cost." *See* J.A. 54. She also said that Formica would again be "seen by the doctor to determine if [the Molar problem] is [an] urgent matter." *Id.* at 55. On this record, Formica never saw the

16

Jail doctor in that regard, and the Pitts affidavit did not acknowledge her September 23 communication to Formica.

e.

About a month later, on October 17, 2014, Nurse Pitts consulted with the Jail dentist. She asked the dentist why he had recommended referring Formica to an oral surgeon for extraction of the Molar, rather than handling the procedure himself. The Jail dentist responded that Formica was medically compromised because of his blood thinning medication. When Pitts advised the Jail dentist that Formica had not been on that medication since March 2014, the dentist agreed to perform an extraction of the Molar, and he prescribed antibiotics and a pain reliever for Formica. Pitts then wrote a lengthy note in Formica's chart indicating that the Jail dentist would perform the extraction. Two days later, on October 19, Pitts updated Formica's chart, reporting that Formica "stated he did not need to see the dentist" because his Molar had fallen out. *See* J.A. 204.

Three days thereafter, however, on October 22, 2014, Formica advised the medical department that, although the Molar had fallen out, remnants of the tooth remained and were causing lingering issues. He requested medical assistance but said that he would not make any copayments until he was pain free. The Jail dentist examined Formica again on October 31, and found that the Molar had "no clinical crown present." *See* J.A. 355. He then recommended removal of the remaining root of the Molar. On November 14, the Jail dentist took x-rays and concluded that an extraction would be difficult due to the curvature of the Molar's root and its close proximity to a nerve. The Jail dentist

therefore again "recommend[ed] referral out for [the] extraction of root #5," that is, the root of the Molar. *Id.* at 357.

f.

On November 21, 2014, Nurse Pitts and Major Dyer met with the Jail dentist to discuss Formica's dental needs and the reasons for referring Formica outside for the Molar's root extraction. Pitts memorialized this meeting with the Jail dentist in a note to Superintendent Aylor, reporting that the dentist believed "this is a pre-existing condition" and "not a life threatening emergency," but that the Molar's root "could likely become abscessed at some point." *See* J.A. 359. She also advised Aylor that the Molar was the same tooth that Formica had referenced in his lawsuit. Aylor responded in writing that very day, directing Pitts to promptly schedule the outside dental appointment to avoid the risk of an abscess. Aylor also indicated — consistent with the Inmate Handbook — that the costs of the extraction should be deducted from Formica's inmate account because the Jail dentist had determined that the condition was pre-existing and not life threatening. Accordingly, Pitts advised Formica that "he would be charged [for the procedure] and his inmate account [would be] placed in a negative balance and funds withdrawn to reimburse the Jail as they become available." *Id.* at 235.

Notwithstanding the foregoing events, no action was thereafter taken with respect to treatment or extraction of the Molar's root. Formica thus submitted nine more requests to the Jail officials — on November 23, 2014; December 14, 15, 16, 17, 20, 22, and 29, 2014; and January 12, 2015 — asking when he would see the outside dentist. Formica therein asserted that none of the problems with the Molar were pre-existing, that the

18

problems arose while he was in the Jail, and that the Jail was seeking to escape responsibility for inmate medical care. He also accused the Jail officials of using indigent status to deny him needed medical care. On January 13, Formica asserted that money was not an issue and said that when he was "completely out of pain a check will be issued." *See* J.A. 408.

g.

On January 15, 2015, Formica was scheduled to see the outside oral surgeon for extraction of the Molar's root. Formica was finally seen by the oral surgeon on January 22, and the surgeon promptly diagnosed a "retained abscessed root" and recommended extraction under general anesthesia. *See* J.A. 365. That procedure was scheduled for February 23. Prior to the appointment, however, Formica was transferred from the Jail in Orange to another facility, and he ended up at the Pocahontas facility in southwest Virginia in late March. The Molar's root was finally extracted on July 27, 2015.

II.

With the foregoing factual and procedural recitation in mind, we turn to our assessment of Formica's appeal, in which he challenges the district court's award of summary judgment to the Jail officials on his § 1983 deliberate indifference claims. We review de novo a district court's summary judgment award, viewing the facts and reasonably drawn inferences in the light most favorable to the plaintiff. *See FOP Lodge No. 89 v. Prince George's Cnty.*, 608 F.3d 183, 188 (4th Cir. 2010). Summary judgment is only appropriate when the record shows "that there is no genuine issue as to any

19

material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine issue of material fact is one "that might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.

A prisoner has a constitutional right to the medical care necessary to address his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). And a prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care. *See Estelle*, 429 U.S. at 104-05. Importantly, a judicial assessment of deliberate indifference has two aspects — an objective inquiry and a subjective inquiry. *See Jackson*, 775 F.3d at 178.

To satisfy the objective inquiry of a deliberate indifference claim, "the inmate's medical condition must be serious — one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Jackson*, 775 F.3d at 178 (internal quotation marks omitted). A medical condition is shown as objectively serious when it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). To satisfy the

20

subjective inquiry of a deliberate indifference claim, the plaintiff must show that the public official "knows of and disregards an excessive risk to inmate safety or health." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A deliberate indifference claim must satisfy a high bar, and that bar is not met by showing that "an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *See Jackson*, 775 F.3d at 178.

Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless "the delay *results* in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." *See Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)). Notably, as unpublished opinions, our *Webb* and *Sharpe* decisions do not constitute binding precedent. They are consistent, however, with the precedent of other courts of appeals. *See, e.g.*, *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017); *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *Wood v. Housewright*, 900 F.3d 1332, 1335 (9th Cir. 1990). *But see Webb*, 281 F. App'x at 170 (Gregory, C.J., dissenting) ("Deliberate indifference should not turn on whether [the

21

inmate's] condition worsened during the delay . . . . It is the delay, itself, that is deliberately indifferent."); *accord Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *Smith v. Carpenter*, 316 F.3d 178, 187-88 (2d Cir. 2003).

B.

Here, the district court treated each of Formica's § 1983 deliberate indifference claims as being premised on a delay in treatment. Relying on our unpublished *Webb* and *Sharpe* decisions, the court awarded summary judgment to the Jail officials for lack of evidence that any delay in the Wisdom Tooth and Molar treatments resulted in substantial harm. On the Wisdom Tooth claim, the court also concluded that Formica failed to show that he had a serious medical condition during a treatment delay, i.e., that he was at risk of substantial harm in connection with the Wisdom Tooth. Meanwhile, on the Molar claim, the court determined that there was no deliberate indifference during those parts of the treatment delay attributable to the Jail officials, as the officials initially had a reasonable belief that Formica did not have a serious medical condition and then acted reasonably once they perceived that the untreated Molar placed him at risk of substantial harm.

We are satisfied to resolve the Wisdom Tooth claim by affirming the award of summary judgment to the Jail officials on the ground that Formica has not made the necessary showing of a serious medical condition. With respect to the Molar claim, we affirm the summary judgment award as to Major Dyer and Superintendent Aylor, because they were insufficiently involved in the conduct of which Formica complains. As further explained below, however, we vacate the summary judgment award to Nurse Pitts on the

22

Molar claim, for there is a genuine dispute as to whether she knew of and disregarded an excessive risk to Formica's health. Moreover, even assuming that the Molar claim is properly characterized as a delay claim and that there must be resultant harm under *Webb* and *Sharpe*, Formica has sufficiently demonstrated that the delayed treatment of the Molar exacerbated his tooth condition and prolonged his pain.[7]

1.

Formica's saga with the Molar began in January 2014 when he reported to Nurse Pitts that he was in pain because of a missing filling in his Molar. In June, the Jail dentist observed a large cavity in the Molar, with possible tissue involvement. By September, the Molar was in gross decay and only part of its crown remained. In October, Formica reported to the Jail officials that the Molar had broken and fallen out, leaving only remnants of the tooth. In January 2015, Formica was diagnosed with an abscessed root that required oral surgery. Thus, over the course of about a year, Formica went from losing a filling from the Molar to having nearly all of the Molar fall out of his mouth, with the root being infected and abscessed.

---

[7] We emphasize that we are simply assuming today that Formica's Molar claim is properly characterized as a delay claim and that there must be a showing under our unpublished *Webb* and *Sharpe* decisions of resultant harm. Nothing in our opinion is intended to bar Formica in subsequent proceedings from pursuing any theory that Nurse Pitts improperly denied or interfered with essential treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (recognizing that deliberate indifference to an inmate's medical needs can be proven when prison medical personnel are shown to have "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed"). Nor do we mean to prohibit Formica from contesting the applicability of the non-precedential decisions in *Webb* and *Sharpe*.

In these circumstances, the condition of the Molar readily satisfies the objective inquiry of the deliberate indifference analysis. That is, the Molar's condition, left untreated, posed an excessive risk of further significant injury and unnecessary and wanton infliction of pain. As courts of appeals have recognized, a "tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction," and "presents a serious medical need." *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). Furthermore, an abscessed tooth "is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond — way beyond. It is often painful and can be dangerous." *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015). Evidentiary materials in the record similarly demonstrate that "abscessed teeth can be very serious. If left untreated the infections may cause swelling that closes off the airway, or . . . may travel to the brain and cause death." *See* J.A. 154. Accordingly, Formica's degenerative dental condition, which resulted in the Molar's infected and abscessed root, constitutes a serious medical condition.

2.

With the objective inquiry necessarily resolved in favor of Formica, our disposition of the Molar claim as to Nurse Pitts turns to the subjective inquiry of the deliberate indifference analysis — whether Pitts knew of and disregarded the excessive risk to Formica's health. That inquiry is a factual one "subject to demonstration in the usual ways, including inference from circumstantial evidence." *See Farmer*, 511 U.S. at

24

842. A factfinder is entitled, in appropriate circumstances, to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Indeed, jail officials "may not simply bury their heads in the sand and thereby skirt liability" by, for example, refusing to "verify underlying facts that [they] strongly suspected to be true, or . . . declin[ing] to confirm inferences of risk that [they] strongly suspected to exist." *See Makdessi v. Fields*, 789 F.3d 126, 133-34 (4th Cir. 2015) (internal quotation marks omitted). As the Supreme Court has recognized, when a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action. *See Farmer*, 511 U.S. at 844.

During the relevant time period, Pitts was the Medical Supervisor at the Jail and was closely involved in Formica's dental treatment process. Indeed, she scheduled Formica's dental appointments and responded to his multiple inquiries relating to the Molar. Those instances included, by way of example, the following:

- On February 7, 2014, Formica reported that the Jail dentist had examined the wrong side of his mouth and overlooked an obvious cavity in his Molar that other inmates could see. Formica requested a reevaluation, which Nurse Pitts denied absent another copayment.

- On March 10, 2014, Formica requested a temporary filling of the cavity in his Molar that the Jail dentist overlooked, complaining that "the tooth really hurts now." *See* J.A. 323. Formica was scheduled to see the Jail dentist, but that appointment was cancelled by Captain Deane — with Nurse Pitts's knowledge — when Formica declined to make the copay.

- On June 13, 2014, the Jail dentist identified a large cavity in the Molar with possible tissue involvement. The Jail dentist said that he could not fix the problem and would refer Formica to the outside oral surgeon. Nurse Pitts was aware of this evaluation and the representations made by the Jail dentist to Formica. Pitts obtained a

25

cost estimate from the oral surgeon for treatment of the Molar, but declined to schedule an appointment with the surgeon until Formica had sufficient funds in his inmate account to pay for it.

- By September 2014, the Molar was grossly decayed and had very little crown remaining. The Jail dentist recommended extraction by an oral surgeon. Formica repeatedly requested the extraction, emphasizing the serious condition of the Molar and the negative impact on his overall health. Nurse Pitts continued to insist, however, that Formica have sufficient funds in his account to pay the oral surgeon before scheduling the extraction. Pitts also said that Formica would again be "seen by the doctor to determine if [the Molar problem] is [an] urgent matter," but such an examination did not occur. *See* J.A. 55.

- After consulting with the Jail dentist in October 2014, Nurse Pitts advised Superintendent Aylor that the dentist recommended an extraction of the Molar due to the risk of abscess. Pitts nevertheless characterized the extraction as elective and recommended scheduling the procedure after Formica could pay for it. Aylor disagreed and directed that Formica be immediately scheduled with the outside oral surgeon.

The record reflects that Nurse Pitts was aware of or at least must have strongly suspected the substantial risks posed by the untreated Molar, as she was informed of such risks by both Formica and the Jail dentist, and she personally witnessed the degeneration of the Molar's condition. Pitts nevertheless declined to schedule the extraction unless Formica could pay for the procedure in advance, thereby failing to acknowledge that Formica suffered from a serious medical condition and to take reasonable steps in response. Indeed, Pitts failed to heed the Inmate Handbook's provision that "NO INMATE WILL EVER BE DENIED MEDICAL SERVICES DUE TO AN INABILITY TO PAY!" *See* J.A. 243. Instead, she denied prompt, simple treatment of the Molar and allowed it to break off at its infected and abscessed root. That handling of the Molar

26

problems by Pitts was, as the magistrate judge determined, simply "intolerable." *See* Recommendation 22; *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (recognizing that "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment"). At bottom, as Pitts delayed the treatment of the Molar, she knew of and disregarded the excessive risk to Formica's health.

3.

Finally, as mentioned above, we assume that the Molar claim is properly characterized as a delay claim and that Formica must show under our unpublished *Webb* and *Sharpe* decisions that the delay in treatment of the Molar resulted in actual harm. Clearly, Formica has established that he suffered substantial harm, in that the treatment delay exacerbated the Molar's condition — taking it from a tooth with a mere missing filling to an infected and abscessed root — while also prolonging Formica's pain. The summary judgment award in favor of Nurse Pitts was thus not warranted on the Molar claim, and the district court's ruling to the contrary must be vacated.[8]

---

[8] In vacating the summary judgment award to Nurse Pitts on the Molar claim, we reject her contention that she is entitled to qualified immunity because the Eighth Amendment right at issue was not clearly established. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016) (explaining that "[t]here is no requirement that the very action in question must have previously been held unlawful for a reasonable official to have notice that his conduct violated that right"; rather, "we define the right in question as the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs" (alterations and internal quotation marks omitted)).

III.

Pursuant to the foregoing, we affirm the summary judgment award made by the district court, except as to the Molar claim against Nurse Pitts. We vacate the summary judgment award to Pitts on that claim and remand for such other and further proceedings as may be appropriate.[9]

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*

---

[9] Formica also contends that the district court erred in denying his requests for the appointment of counsel. In the circumstances, however, we need not resolve whether the court abused its discretion in failing to appoint counsel. Because we remand the Molar claim as to Nurse Pitts, we leave any issue respecting such an appointment for the remand proceedings.

WILKINSON, Circuit Judge, concurring in part and dissenting in part:

I thank the majority for its thoughtful opinion. I concur in affirming the dismissal of all claims against Superintendent Aylor and Major Dyer. I also concur in affirming the dismissal of the claim relating to the treatment of Formica's Wisdom Tooth.

I would affirm as well the district court's dismissal of the claim related to Formica's Molar. Judge Conrad's careful and meticulous opinion explains in some detail that while there may have been room for difference in the medical evaluations of Formica's situation, there was no deliberate indifference on the part of jail authorities to it. As the district court noted, nurse Pitts actually "tried to aid Formica in his desire for the extraction procedure by asking the jail dentist why he could not extract tooth #5 after all. Then, after most of the tooth fell out, Formica himself continued delaying his own treatment by refusing the pre-appointment antibiotics and insisting he did not have to sign paperwork to receive treatment." J.A. 641-42.

The district court aptly summarized the situation as follows: "In summation, delays that occurred between the initial development of the problem with tooth #5 and its extraction must be attributed to four factors: (1) Formica's own actions and blanket objection that the jail should cover all costs for repair of the tooth; (2) defendants' reasonable conclusion from the dental notes that tooth #5 did not require emergency treatment; (3) scheduling issues in the oral surgeon's practice; and (4) Formica's transfer to the VDOC and VDOC officials' postponement of the procedure. Careful review of the medical records the parties have provided simply does not reflect any clinical assessment of Formica's condition as a serious medical need for immediate oral surgery at any point

29

between January and November 2014. . . . Once the dentist notified them in November 2014, that further delay of the extraction might present some health risks, defendants took reasonable steps to arrange for the procedure without proof that Formica could pay." J.A. 642-43.

My distinguished colleagues have ruled for the most benign and constructive of reasons. But even benign intentions can give rise to unintended consequences. With the greatest respect, I fear that marginal lawsuits of this variety will operate to dissuade financially pressed local jails in Virginia from offering needed in-house dental care to detainees at all. Getting sued for doing more than the minimum can lead officials to abandon medical initiatives that any reasonable person would applaud.